**Dennis V. O'DAY, Plaintiff,**

v.

**McDONNELL DOUGLAS HELICOPTER COMPANY, a foreign corporation, Defendant.**

**No. CIV 91–777 PHX PGR.**

United States District Court, D. Arizona.

March 9, 1992.

Francis G. Fanning, Tempe, Ariz., for plaintiff.

Tibor Nagy, Jr., Tucson, Ariz., for defendant.

## MEMORANDUM and ORDER

ROSENBLATT, District Judge.

This matter is before the Court on defendant McDonnell Douglas Helicopter Company's (MDHC) motion for summary judgment on plaintiff Dennis O'Day's (O'Day) complaint that his employment with MDHC was wrongfully terminated. Having reviewed the record and the arguments of the parties, the Court finds that MDHC is entitled to entry of judgment in its favor, as O'Day has no remedy for the claims alleged in his complaint under the rationale of *Summers v. State Farm Mutual Automobile Ins. Co.,* 864 F.2d 700 (10th Cir. 1988).

O'Day, an engineer, was employed by MDHC from December 12, 1983, until his layoff on July 20, 1990. O'Day was 46 years old at the time of the layoff. On July 10, 1990, and again on October 26, 1990, O'Day filed age discrimination charges with the Equal Employment Opportunity Commission (E.E.O.C.). The first charge alleged that MDHC's failure to promote him was based on unlawful age discrimination and was also in retaliation for complaints O'Day had made to management in 1989. The October charge alleged that O'Day's selection for layoff was motivated by age discrimination and retaliation.

On the evening of June 8, 1990, O'Day surreptitiously entered his supervisor's office and removed his confidential personnel file from the desk. O'Day claims his purpose was to gather information to prepare for his charge with the E.E.O.C. The file was marked "personal/sensitive" or "privates sensitive" and was not intended to be divulged to MDHC employees, except management and human resource representatives. The file contained information on individual engineer's rankings called "totems". These totems were used for layoffs, assignments, and promotions. MDHC management had completed two such totems, one in February when MDHC conducted its first company-wide layoff, and another in June. In February O'Day was ranked above several engineers, and in June O'Day ranked at the bottom. This low ranking was the criterion for his layoff in July.

After O'Day removed the file, he photocopied portions of the materials on the company photocopier and replaced the file in the desk drawer. He then left the premises with the documents. Later, he showed the photocopied totems to a friend and co-worker, to warn the co-worker of his low ranking.

A week later, again without the authorization of MDHC, O'Day returned to MDHC after his shift, and removed and copied his entire confidential personnel file from his supervisor's desk. As in the case the week before, he removed these copied documents from the premises.

Before the E.E.O.C. had made any findings, O'Day terminated the investigation, and in April of 1991 he filed a suit in Maricopa County Superior Court.

The suit alleged four causes of action: (1) Discrimination in Promotion, pursuant to the federal Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA") and the Arizona Civil Rights Act, A.R.S. § 41–1401 et seq., ("ACRA"); (2) Discrimination in Discharge of Employment; (3) Wrongful Discharge (alleging that the action violated Arizona public policy against age discrimination), and (4) Breach of Employment Contract. MDHC timely removed the action to this court on the basis of original jurisdiction as the con-

troversy arose under the federal Age Discrimination Act, pursuant to 28 U.S.C. § 1441. The court has pendent jurisdiction of the state law claims as all claims arise from a common nucleus of operative fact.

MDHC did not know of the unauthorized removal of the files until MDHC's counsel deposed O'Day in preparation for its defense of this action. MDHC contends that O'Day's conduct constituted a direct violation of MDHC's "Group I" company rules, and as such would have resulted in O'Day's immediate termination. MDHC, after learning of the violation, converted O'Day's "layoff" status to "terminated".

MDHC has moved for summary judgment on the ground that the "after acquired evidence" doctrine, created by the Tenth Circuit in *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir.1988), precludes any relief to O'Day. O'Day disputes the applicability of the after-acquired evidence doctrine. In addition, O'Day claims that his alleged misconduct was protected activity under the ADEA's "opposition clause".

*Application of Summers*

MDHC argues it is entitled to summary judgment on the basis of the *Summers* decision even assuming that O'Day had been subjected to age discrimination, since O'Day's unauthorized removal and copying of confidential materials, if known to MDHC, would have resulted in his immediate termination.

In *Summers,* the plaintiff alleged he was wrongfully discharged from his position as a field claims representative due to his age and religious beliefs. In preparing for trial, almost four years after the plaintiff's discharge, the defendant examined the plaintiff's records and discovered that he had falsified over 150 records. The Tenth Circuit agreed with the defendant's argument, that although this "after acquired" evidence might not be relevant to show why plaintiff was discharged, it was relevant in deciding what relief, if any, was available to the plaintiff. 864 F.2d at 704. The Tenth Circuit in *Summers* made clear that the seminal case of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which established the test for Title VII discrimination had little application to the issue of the significance of the defendant's discovery of the plaintiff's misconduct. 864 F.2d at 705.

Until now, the applicability of the *Summers* after acquired evidence doctrine has not been addressed in the Ninth Circuit. Courts in the Tenth and the Fourth Circuits have applied the doctrine. *See, Churchman v. Pinkerton's, Inc.*, 756 F.Supp. 515 (D.Kan.1991); *Punahele v. United Air Lines, Inc.*, 756 F.Supp. 487 (D.Colo.1991); *O'Driscoll v. Hercules, Inc.*, 745 F.Supp. 656 (D.Utah 1990); *Mathis v. Boeing Military Airplane, Co.*, 719 F.Supp. 991 (D.Kan.1989); *Smallwood v. United Air Lines, Inc.*, 661 F.2d 303 (4th Cir.1981).

In order to rely on the after acquired evidence doctrine, the employer must prove that, had it known of the employee's misconduct, the employee would have been discharged immediately. *O'Driscoll*, 745 F.Supp. at 659. MDHC has met this burden by introducing the MDHC employee handbook together with an affidavit by an MDHC human resource representative stating that O'Day's conduct was in direct violation of company policy and as such, would result in immediate termination.[1] The Handbook states that violations entitle the employer to take "corrective action".

---

1. MDHC's Company Rules states in relevant part:

"In order to ensure a safe, orderly, and productive work environment and protect the rights of all employees, the Company has established rules of personal conduct. Infractions requiring corrective action are described below. The Company, must reserve the right to take corrective action for unacceptable conduct not specifically described.

GROUP 1

Rule infractions in this group are extremely serious and will normally result in discharge unless extenuating circumstances are present.

\* \* \* \* \* \*

3. Deliberate or negligent destruction, damage or misuse of Company property or property of others.

4. Theft or unauthorized removal from premises of Company property or property of others.

The question of whether or not an employer would actually terminate an employee could indeed, in some circumstances create a genuine issue of material fact. In *Punahele v. United Air Lines, Inc., supra,* the court denied United Airlines' motion for summary judgment, on the plaintiff's claim of discrimination in hiring practices, stating that the plaintiff had shown, through affidavits, that United Airlines may have acted differently, i.e., would have hired the plaintiff. 756 F.Supp. at 491. It concluded that whether United would have refused to hire the plaintiff was an issue for resolution by a jury. *Id.*

However, this court believes there is no question as to the outcome of O'Day's employment status. O'Day did not present any controverting evidence showing that MDHC would *not* have fired him. O'Day attempts to show that MDHC's firing practices are inconsistent, but it is insufficient to uphold an argument that a material fact exists as to defeat a motion for summary judgment. O'Day argues that another employee would on occasion violate security requirements by gaining access to equipment necessary to perform his job, but this employee was never terminated. However, this argument is not sufficiently supported in the record. There is no evidence that this type of violation is against MDHC policy, or that it would result in termination.

O'Day next argues that the *Summers* rationale should not apply to these facts. Instead, O'Day argues this is a "mixed motive" cases controlled by the Supreme Court case, *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In *Hopkins,* the Court held that when a plaintiff in a Title VII case proves that an impermissible factor played a part in the employment decision, the defendant may avoid a finding of liability by proving that it would have made the decision anyway. *Hopkins,* 490 U.S. at 244–45, 109 S.Ct. at 1787–88, 104 L.Ed.2d at 284.

However, later, the district court in *Punahele,* correctly clarified that *Hopkins* dealt solely with the elements that constitute *liability* for unlawful employment discrimination. 756 F.Supp. at 490. The issue faced in *Summers,* and the present case, deals with whether or not the plaintiff was *injured* by the unlawful discrimination.[2]

As in *Summers* and *Punahele,* liability of MDHC is not at issue. The after acquired evidence, i.e. the discovery of O'Day's unauthorized file removal, is relevant in determining whether O'Day was injured by the assumed discrimination and is subject to a summary judgment motion. Therefore, the reasoning in *Summers,* and not *Hopkins,* is appropriate in this case.

*Protected Conduct*

O'Day argues that the present case can be distinguished from *Summers,* in that O'Day's acts were protected activity under the "opposition clause", 29 U.S.C. § 623(d).[3] As such, he would be protected from retaliatory acts by MDHC.

Although the ADEA does not define "protected activity", case law has created guidance as to when activity is protected from employer retaliation. In *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222 (1st Cir.1976), the Court, when faced with the issue of an employee's hostile, disruptive conduct, established that the conduct in question must be reasonable in light of the employer's

---

**2.** In *Summers,* the court stated that "although the after acquired evidence cannot be said to be the *cause* for Summers' discharge, it is relevant to his claim of *injury,* and does itself preclude the grant of any present relief or remedy to Summers." 864 F.2d at 708. (Emphasis added).

**3.** 29 U.S.C. § 623(d) provides:

Opposition to unlawful practices; participation in investigations, proceedings, or litigation

It shall be unlawful for an employer to discriminate against any of its employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act.

interest in maintaining a harmonious and efficient operation. In addition, the means of opposition must be legal. *See, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

In the cases that have denied an opposition clause claim, the plaintiff's activities significantly disrupted the workplace. Perhaps the most analogous case to the present case is *Jefferies v. Harris Co. Comm. Action Assoc.*, 615 F.2d 1025 (5th Cir.1980). In *Jefferies*, the court held that the plaintiff employee's copying of confidential documents interfered with the employer's interest in maintaining confidentiality of employee records, and thus was not protected activity.

This court concludes, insofar as O'Day claims his conduct was protected, that no reasonable jury would find that O'Day's conduct, surreptitiously removing confidential management files from his supervisor's desk, photocopying them, and showing the file to a co-worker, was reasonable in light of the circumstances.

*State Law Claims*

■ O'Day's remaining state law statutory and common law claims also fail. O'Day alleges that his lack of promotion and layoff violated the Arizona Civil Rights Act, A.R.S. § 41–1461 *et seq.*, and breached his employment contract with MDHC.

The issue is whether the *Summers* after acquired evidence doctrine would counter a discrimination claim under state law. The Arizona Civil Rights Act contains the principal antidiscrimination provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Arizona courts follow the principle that federal Title VII case law is persuasive in interpreting Arizona anti-discrimination law. *See, e.g., Broomfield v. Lundell*, 159 Ariz. 349, 767 P.2d 697 (App.1988); *Civil Rights Division v. Superior Court*, 146 Ariz. 419, 706 P.2d 745 (App.1985).

This court concludes that the *Summers* rationale should be applied to O'Day's claim under the Arizona Civil Rights Act in the same manner as it applies to the federal Age Discrimination in Employment Act.

■ O'Day next argues that MDHC breached its employment contract with him. Arizona courts have recognized that misconduct not known to the employer at the time of the plaintiff's termination, but later discovered, can be used as a defense to a breach of employment claim. In *Hampton v. Sandy Cowen Agency*, 154 Ariz. 14, 739 P.2d 1331 (App.1987), the plaintiff was terminated without severance pay against the terms of the contract. In preparation for its defense, the employer discovered that the employee made misrepresentations on his resume. 739 P.2d at 1331. The defendant showed that, had it known of the misrepresentations, it would not have hired him. *Id.* After the superior court denied the defendant's motion for summary judgment, the Arizona Court of Appeals reversed, stating that an employer is free to assert a claim for recision on grounds not known to the employer at the time of the breach pursuant to the Restatement (Second) of Contracts § 385 (1979). *Id.* at 1333. Comment (a) to section 385 states:

> If a party has the power to avoid the contract ... his refusal to perform is not a breach. This is so even if he is ignorant of his power of avoidance.

MDHC claims, and has shown through affidavits, that it would have fired O'Day had it known of his conduct. O'Day has not sufficiently rebutted this argument. Thus, MDHC would have the power to avoid its contract with O'Day. According to the comment, and the Arizona Court of Appeals interpretation, it does not matter if that power is not known at the time of the breach. Therefore,

IT IS ORDERED that MDHC's Motion for Summary Judgment (doc. # 13) is granted and that the Clerk of the Court shall enter judgment accordingly.