Christine **McKENNON**, Plaintiff–Appellant,

v.

**NASHVILLE BANNER PUBLISHING COMPANY**, Defendant–Appellee.

No. 92–5917.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 23, 1993.

Decided Nov. 15, 1993.

The plaintiff claims that the Nashville Banner violated her rights by discharging her at the age of sixty-two on the basis of age and that the district court misapplied the "after-acquired evidence" doctrine by allowing evidence of certain misconduct during her employment, discovered by the Banner *after* her termination, to negate her claim. *See McKennon v. Nashville Banner Publishing Co.*, 797 F.Supp. 604 (M.D.Tenn.1992). Because we determine the district court properly applied the after-acquired evidence doctrine to the facts of this case, we AFFIRM the district court's grant of summary judgment.

Michael E. Terry (argued and briefed), Nashville, TN, for Christine McKennon.

Elizabeth B. Marney (briefed), R. Eddie Wayland (argued and briefed), M. Kim Vance (briefed), King & Ballow, Nashville, TN, for The Nashville Banner Pub. Co.

Dori Bernstein (argued and briefed), Washington, DC, for amicus curiae E.E.O.C.

Ann Reesman (briefed), McGuiness & Williams, Washington, DC, for amicus curiae The Equal Employment Advisory Council.

Before: KENNEDY and RYAN, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

In this age discrimination suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, the plaintiff, Christine McKennon, appeals the district court's grant of summary judgment in favor of defendant Nashville Banner Publishing Co. ("the Nashville Banner" or "the Banner"). The Equal employment Opportunity Commission filed an *amicus curiae* brief in support of Mrs. McKennon, and the Equal Employment Advisory Council filed one in support of the Nashville Banner.

**I**

The Nashville Banner employed Mrs. McKennon from May 1951 to October 31, 1990, when she was terminated. Mrs. McKennon worked primarily as a secretary, and over the years the company consistently evaluated her work performance as excellent. On May 6, 1991, Mrs. McKennon filed suit claiming age discrimination. While deposing her in December 1991, the Nashville Banner discovered Mrs. McKennon had, while employed as secretary to the Comptroller, Ms. Stoneking, copied and removed from the newspaper's premises several confidential documents to which she had access as such secretary. She took the documents home and showed them to her husband.[1] Mrs. McKennon asserted she copied the documents "in an attempt to learn information regarding my job security concerns" and for her "insurance" and "protection." As a result, the Banner sent Mrs. McKennon a "termination letter" in December 1991, asserting it would have terminated her immediately during her employment if it had known of her acts. It is undisputed, from the testimony of Banner executives, that the Banner would have discharged Mrs. McKennon when she took and copied the records if it had then known that she had done so.

---

1. The documents included: Nashville Banner Fiscal Period Payroll Ledger dated 9/30/89; Nashville Banner Publishing Co., Inc., Profit and Loss Statement dated 10/30/89; a note from Elise McMillan to Simpkins; a memorandum from Imogene Stoneking to Irby C. Simpkins, Jr., dated 2/3/89; a handwritten note dated 2/8; and an Agreement between the Banner and one of its managing employees, notarized 3/1/89.

The Banner's summary judgment motion assumed, for purposes of the motion, that it would be liable to Mrs. McKennon under the ADEA in discharging her for age discrimination[2] but for the undisputed fact that, before she was discharged, Mrs. McKennon was guilty of conduct which, if known by the Banner, would have caused her discharge.[3] The district court, in granting summary judgment, agreed with this proposition. It determined that, because it was undisputed that Mrs. McKennon was guilty of misconduct, prior to her discharge, that would, if known by the Banner, have caused her discharge, the Banner was entitled to summary judgment. The district court concluded that this result must follow because Mrs. McKennon did not suffer injury from the claimed violation. *McKennon,* 797 F.Supp. at 608.

Mrs. McKennon contends on appeal that the after-acquired evidence rule should not apply to defeat her age discrimination claim. She argues that her situation is distinct from other cases involving after-acquired evidence because her action concerns employee misconduct during employment rather than employment application fraud and also because a nexus exists between her wrongful conduct and her discrimination claim.[4]

## II

■ This court reviews the district court's grant of summary judgment *de novo,* making all reasonable inferences in favor of the non-moving party. *EEOC v. University of Detroit,* 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c);

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## III

■ We first address in this case the question whether the district court erred in granting summary judgment for the Nashville Banner based on after-acquired, undisputed evidence of Mrs. McKennon's misconduct in copying and removing confidential files and that she would have been discharged for such conduct. More specifically, the issue is whether the after-acquired evidence doctrine applies exclusively to cases of employment application fraud or whether it also applies, as here, to cases of employee misconduct during employment.

■ The seminal case establishing the after-acquired evidence doctrine in employment discrimination cases is *Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700 (10th Cir.1988). The doctrine mandates judgment as a matter of law for an employer charged with discrimination if evidence of the plaintiff employee's misconduct surfaces at some time after the termination of the employee, and the employer can prove it would have fired the employee on the basis of the misconduct if it had known of it. In *Summers,* the employee claimed he was fired on the basis of his age and race, in violation of the ADEA and Title VII. Four years after the discharge, while preparing for trial, the employer discovered evidence that the employee falsified records in 150 instances.[5] The Tenth Circuit affirmed summary judgment for the employer, reasoning that while the after-acquired evidence could not have

---

2. The summary judgment record contains substantial deposition testimony of Mrs. McKennon that she was indeed discharged because of age. This contention, however, is disputed by other testimony.

3. Several officers of the Banner have sworn in affidavits that Mrs. McKennon would have been discharged for such conduct, and McKennon testified at one point in her deposition that she would have been terminated for this conduct. There, then, is no substantial issue here. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

4. As we understand the appellant's "nexus" argument, it is that her improper taking of the records cannot be a basis for a denial of her claim under the ADEA because she took the records to give her a basis to contest her expected discharge because of her age.

5. The employer was also aware *during* Summer's employment that he had falsified some company records. The company placed him on probationary status for two weeks and warned him never again to falsify company records, but he did not heed that advice. 864 F.2d at 702.

been the actual cause of the employee's discharge, it was relevant and determinative as to the employee's claim of injury, and precluded the grant of any relief or remedy. *Id.* at 708.

This circuit adopted the *Summers* after-acquired evidence rule in *Johnson v. Honeywell Info. Sys., Inc.*, 955 F.2d 409 (6th Cir. 1992), a diversity action under Michigan law. In *Johnson*, the plaintiff sued her former employer alleging that she was discharged in violation of Michigan's Elliott–Larsen Civil Rights Act. During discovery, the employer learned that the plaintiff had misrepresented her educational background on her employment application, for example, claiming to have a bachelor's degree when in fact she did not. The court held that:

> on these facts, even if we assume that Honeywell discharged Johnson in retaliation for her opposition to violations of the Act, she is not entitled to relief. Because Honeywell established that it would not have hired Johnson and that it would have fired her had it become aware of her resume fraud during her employment, Johnson is entitled to no relief, even if she could prove a violation of Elliott–Larsen.

*Id.* at 415. The *Johnson* court noted, however, that evidence of an employee's resume fraud "must establish valid and legitimate reasons for the termination of employment." *Id.* at 414.

We reiterated our commitment to the *Summers* after-acquired evidence rule in *Milligan–Jensen v. Michigan Technological Univ.*, 975 F.2d 302 (6th Cir.1992), *cert.*

granted, —— U.S. ——, 113 S.Ct. 2991, 125 L.Ed.2d 686, *cert. dismissed,* —— U.S. ——, 114 S.Ct. 22, 125 L.Ed.2d 773 (1993). In *Milligan–Jensen,* the plaintiff produced evidence that her employer violated Title VII by discriminating against her on the basis of her sex. After the employee's discharge, however, the defendant discovered the employee had omitted a DUI conviction from her employment application. We held that this omission was material and explained that because the plaintiff's falsification, "if discovered during her employment, would have resulted in [her] termination, it becomes irrelevant whether or not she was discriminated against...." *Id.* at 305. The Supreme Court granted *certiorari* to review this case, but dismissed it after the parties settled. Thus, in *Johnson* and *Milligan–Jensen,* we have firmly endorsed the principle that after-acquired evidence is a complete bar to any recovery by the former employee where the employer can show it would have fired the employee on the basis of the evidence.[6]

Moreover, the *Summers* case, from which this circuit adopted the after-acquired evidence rule, did not involve resume fraud, but like this case involved evidence of employee misconduct. In *Summers,* the plaintiff falsified company records more than 150 times. 864 F.2d at 703.

Finally, we agree with a district court which recently applied the after-acquired evidence doctrine in a factually similar situation. *O'Day v. McDonnell Douglas Helicopter Co.*, 784 F.Supp. 1466 (D.Ariz.1992). In *O'Day*, a former employee who alleged he was discrim-

---

**6.** *See also Paglio v. Chagrin Valley Hunt Club Corp.*, 966 F.2d 1453, 1992 WL 144674 at *2 (6th Cir.1992) (unpublished) ("even if the Club was motivated to discharge Paglio because of his age, the misuse of Club funds discovered after Paglio's retirement provided an independent basis for termination."); *Dotson v. United States Postal Serv.*, 977 F.2d 976, 978 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 263, 121 L.Ed.2d 193 (1992) ("Even though plaintiff's failure to complete the application truthfully was discovered *post*-termination, he is not entitled to handicap discrimination relief when he was not initially qualified for the position."); *Baab v. AMR Services Corp.*, 811 F.Supp. 1246 (N.D.Ohio 1993) (interpreting Ohio law and holding former employee's state discriminatory discharge claims

were barred by after-acquired evidence of employee's misstatements on employment application); *Bray v. Forest Pharmaceuticals, Inc.*, 812 F.Supp. 115, 117 (S.D.Ohio 1993) ("as the Defendant has shown that the misrepresentations or omissions [on former employee's application] were material, were relied upon by the employer in making its decisions, and are clearly directly related to measuring the candidate for this type of employment, the post-discharge discovery of falsification renders summary judgment appropriate in this case."); and *Benson v. Quanex Corp.*, 1992 WL 63013 (E.D.Mich.1992) (unpublished) (granting summary judgment to employer in racial harassment and constructive discharge action under Michigan Elliott–Larsen Civil Rights Act because the employer showed it would not have hired the employee had it known

inated against under the ADEA surreptitiously removed his confidential personnel file, photocopied portions of the file, and showed some of the material to a co-worker. *Id.* at 1467. The court noted that the issue of whether an employer would actually fire an employee for misconduct could generate a genuine issue of material fact in some cases. Citing an employee handbook and an affidavit by a company official indicating that the plaintiff would have been immediately fired for his conduct, however, the court determined there was no question the employer would have fired the plaintiff and the employer was therefore entitled to summary judgment. *Id.* at 1468–70. Similarly, statements of the Banner officials that McKennon would have been fired had the newspaper known she had removed confidential documents support summary judgment in favor of the Banner.

## IV

■ We next turn to whether the after-acquired evidence doctrine applies to cases where there is an alleged nexus between the employee's misconduct and the discrimination claim. Mrs. McKennon claims she copied and removed the confidential documents only because she feared for her job and thus her conduct was justified. We thus understand her contention to be that, if the Banner should discharge her, she would have a lever with which to resist that action. We find that such an alleged nexus is irrelevant to the application of the after-acquired evidence

doctrine.[7] The sole issue in after-acquired evidence cases is whether the employer would have fired the plaintiff employee on the basis of the misconduct had it known of the misconduct. *See Milligan–Jensen,* 975 F.2d at 304–305.[8]

## V

For the aforementioned reasons, we AFFIRM the district court's grant of summary judgment for the defendant.

---

of the employee's prior felony conviction and incarceration).

7. Of course, if the employee's "misconduct" falls into the category of protected activities set forth in the "opposition clause" to the ADEA, 29 U.S.C. § 623(d), the employer could not avoid liability for discriminatory actions based upon the employee's conduct. Under § 623(d),

> **Opposition to unlawful practices; participation in investigations, proceedings, or litigation**

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

*See Jeffries v. Harris County Community Action Ass'n,* 615 F.2d 1025 (5th Cir.1980) (holding plaintiff employee's copying of confidential documents interfered with the employer's interest in maintaining the confidentiality of employee records, and thus was not protected conduct); and *O'Day v. McDonnell Douglas Helicopter Co.,* 784 F.Supp. 1466, 1470 (D.Ariz.1992) (holding "no reasonable jury would find that O'Day's conduct, surreptitiously removing confidential management files from his supervisor's desk, photocopying them, and showing the file to a co-worker, was reasonable in light of the circumstances."). Copying and removing confidential documents is clearly not protected conduct.

8. We note, incidentally, that if Mrs. McKennon's nexus theory were adopted, it would apply where an employee takes money from her employer for support of herself in anticipation of an unlawful discharge.