John CONLIN, Plaintiff,

v.

MISSION FOODS CORP.,
et al., Defendants.

No. C–93–1673 WHO.

United States District Court,
N.D. California.

May 3, 1994.

---

David N. LaDue, LaDue & Goldston, Walnut Creek, CA, for plaintiff.

Richard R. Pace, Daniel J. Payne, Carlsmith Ball Wichman Murray Case & Ichiki, Long Beach, CA, for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

The motion of defendants, Mission Foods Corporation, Tecnica Empresarial Corporativa Monterrey S.A. de C.V., Gruma Corporation and Ralph Vallejo, having come before the Court on April 14, 1994, the Court having considered the parties' pleadings, and for the reasons hereinafter stated, defendants' motion for summary judgment is DENIED in part and GRANTED in part.

### I.

In January of 1991, Mission Foods Corp. ("Mission Foods") hired John Conlin ("Conlin") as a warehouseman. Conlin suffers from cerebral palsy. Conlin claims that warehouse supervisor Ralph Vallejo ("Vallejo") harassed him and denied him work hours equal to other employees. Vallejo terminated Conlin's employment on September 4, 1991.

In response, Conlin filed a charge of discrimination with the California Department of Fair Employment and Housing on February 7, 1992. Five months later, pursuant to the collective bargaining agreement governing the warehouse, Mission Foods reinstated Conlin as a "seniority employee." (Defs.' P. & A. at 8.) Conlin filed his first judicial complaint against Mission Foods, its parent companies,[1] and Vallejo on September 22, 1992 in Contra Costa County Superior Court. The Superior Court complaint concerned solely the events culminating in Conlin's termination by Mission Foods in September 1991.

Conlin claims to have suffered continuing discrimination and retaliation subsequent to his reinstatement in July, 1992. He also contends that Mission Foods failed to reasonably accommodate him. He filed a second charge of discrimination with the Equal Employment Opportunity Commission on February 9, 1993, and amended his Superior Court complaint to include allegations concerning events that occurred after his reinstatement. Mission Foods removed the amended complaint to this Court.

In his amended complaint, Conlin alleges three causes of action: (1) employment discrimination in violation of California Government Code § 12940, (2) employment discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and (3) wrongful termination and retaliation in violation of California public policy.

Mission Foods, based on evidence obtained through discovery, claims that Conlin falsified his employment application and now moves for summary judgment as to each of plaintiff's causes of action.

### II.

Mission Foods grounds its motion for summary judgment on two independent arguments: (1) that Conlin has not suffered a compensable injury according to the doctrine of after-acquired evidence, and (2) that the ADA cannot be enforced retroactively to violations preceding its enactment.

### A.

#### After–Acquired Evidence

1. *Legal Standards.*

■ The doctrine of after-acquired evidence allows a defendant employer in an employment discrimination action to use evidence of a plaintiff employee's misconduct, acquired after the employer's alleged violations, to demonstrate that the plaintiff has not been injured by the alleged discriminatory acts. Federal courts have taken two prin-

---

1. Mission Foods is a subsidiary of Gruma Corporation, a Nevada Corporation licensed to do business in California, which is in turn a subsidiary of Tecnica Empresarial Corporativa Monterrey S.A. de C.V., a Mexican Corporation licensed to do business in California. (Defs.' P. & A. at 4.)

cipal approaches to the doctrine, each of which recognizes its validity to some extent.

The first approach, propounded by the Tenth Circuit in *Summers v. State Farm Mutual Auto Insurance Co.*, 864 F.2d 700 (10th Cir.1988), holds that a plaintiff, who would have been discharged absent any unlawful motive as proven by after-acquired evidence, has no compensable injury resulting from his employer's discriminatory acts. The second approach, enunciated by the Eleventh Circuit in *Wallace v. Dunn Construction Co.*, 968 F.2d 1174 (11th Cir.1992), rejects the no-recovery rule for a rule that merely eliminates certain types of relief available to the plaintiff, including reinstatement, front pay, or an injunction.

Three circuit courts follow the *Summers* approach, the Sixth, the Seventh, and the Tenth—only the Eleventh does not. The Ninth Circuit has not yet addressed the issue, although two district courts within the Ninth Circuit have split on the issue. *Compare O'Day v. McDonnell Douglas Helicopter Co.*, 784 F.Supp. 1466, 1470 (D.Ariz.1992) (applying the *Summers* doctrine) *with Benitez v. Portland General Electric*, No. CV 91–864–PA, 1992 WL 278104 (D.Or. Mar. 31, 1992) (declining to apply the *Summers* doctrine in the absence of Ninth Circuit precedent).

The *Summers* approach "mandates judgment as a matter of law for an employer charged with discrimination if evidence of the plaintiff employee's *misconduct* surfaces at some time after the termination of the employee, and the employer can prove it would have fired the employee on the basis of the *misconduct* if it had known of it." *McKennon v. Nashville Banner Pub. Co.*, 9 F.3d 539, 541 (6th Cir.1993) (emphasis added) (construing *Summers v. State Farm Mut. Auto Ins. Co.*, 864 F.2d 700 (10th Cir.1988)).

The linchpin of this doctrine is employee misconduct. In virtually every case on point, neither party disputed egregious employee misconduct. *See, e.g., Summers*, 864 F.2d at 703 (employee did not deny falsifying over 150 records); *O'Day*, 784 F.Supp. at 1470 (employee did not deny removing surreptitiously "confidential management files from his supervisor's desk, photocopying them, and showing the file to a co-worker"); *Johnson v. Honeywell Info. Sys., Inc.*, 955 F.2d 409, 412 & 414 (6th Cir.1992) (employee "admittedly" lied as to having a college degree); *Redd v. Fisher Controls*, 814 F.Supp. 547, 550 (W.D.Tex.1992) (employee did not deny falsifying her employment application to hide a felony conviction). Thus, for the doctrine of after-acquired evidence to operate in this case, Mission Foods must first demonstrate misconduct on Conlin's part.

### 2. *Conlin's Alleged Misrepresentations.*

As the alleged misconduct in this action, Mission Foods claims that Conlin misrepresented, both in his employment application and to his supervisor, that he had been a warehouseman for Safeway for 17 years until the Safeway warehouse burned down. Relying on Conlin's deposition, Mission Foods maintains that Conlin actually was "fired by Safeway for poor performance as a warehouseman"[2] and spent his last nine years at Safeway as a janitor. (Defs.' P. & A. at 8.)

Mission Foods claims that had Conlin accurately disclosed this information on his application he would not have been hired. In addition, Mission Foods maintains that had the information surfaced later, Conlin would have been fired immediately upon its discovery. (Ford Decl. ¶ 9; Perez Decl. ¶ 5.) Contrary to Mission Foods' position, in deciding whether the after-acquired evidence doctrine applies to this case, the issue is not whether the nature of Conlin's past experience at Safeway was material to its hiring decision.

---

**2.** Mission Foods' characterization of Conlin's termination as a termination for poor performance is misleading at best. Apparently, as part of an effort to bolster efficiency, Safeway implemented time-motion standards that Conlin could not meet. Although Safeway did terminate Conlin, it reinstated him shortly thereafter with no loss of seniority, with pension credits for time off, and with no pro-rata loss of sick leave or vacation entitlement. (Teninty Decl. Ex. A. at 1–2.) Thus, it was not improper for Conlin to represent on his Mission Foods application that he had worked for Safeway continuously for seventeen years. Mission Foods' allegations of misconduct, therefore, hinge on Conlin's failure to apprise Mission Foods of his alleged change in duties following his reinstatement.

There is little doubt that such information is important. Rather, the issue is whether Conlin deprived Mission Foods of this information through material misconduct—if, for example, he fraudulently misrepresented his experience or intentionally concealed it during the application process. *See Rich v. Westland Printers, Inc.*, Civ.A. No. HAR 92–2475, 1993 WL 220453 at *6 (D.Md. June 9, 1993) ("The relevance of the fraud to the instant action stems from the fact that the plaintiff *willfully and knowingly misrepresented* information to the defendant....") (emphasis added).

Mission Foods alleges that Conlin misrepresented his work experience on his employment application and to his supervisor, Vallejo. The "former employers" section of Mission Foods' employment application leaves space for the date of employment, the name and address of the employer, the salary, the position, and the reason for leaving. It neither requests nor leaves space for an applicant to enumerate the duties of his former job. In completing the application, Conlin indicated that he worked from 1971 to 1988 at a Safeway warehouse for $17,500 as a "warehouseman" until the warehouse "burnt out."[3] (Ford Decl. Ex. E.)

Conlin's supervisor, Vallejo, avers that Conlin "appeared to take great pride in his alleged 17 years experience as a warehouseman, and mentioned it to me on a number of occasions, both before and after he was hired. I asked him specifically before he was hired about his experience and was told by him that he was and had been a warehouseman." (Vallejo Decl. ¶ 5.) Vallejo does not claim that Conlin made any specific representations as to his specific duties as a warehouseman.

■ Based entirely upon Conlin's deposition, Mission Foods argues that Conlin's representations in his employment application and to Vallejo were false. Conlin's deposition testimony indicates that upon his reinstatement at Safeway, he performed janitorial duties.[4] Contrary to Mission Foods' assertions, however, Conlin's testimony does not compel the conclusion that he misrepresented himself to Mission Foods in his employment application or to his supervisor.

First, many of the questions in the deposition are leading, e.g. "What were your job duties *as a janitor?*", or "How long did you work *as a janitor?*" Thus, the questions might well have elicited responses referring to only a subset of Conlin's duties. In addition and more importantly, Conlin presents uncontroverted evidence from Ron Teninty ("Teninty"), the union representative at Safeway for the relevant time period, confirming this supposition: "[f]ollowing his reinstatement as a warehouseman, John Conlin performed satisfactorily in a number of job classifications ... [including] loader, forklift operator, order selector, and sanitarian." (Teninty Decl. ¶ 8). According to Teninty, these classifications all fall under the general ru-

---

**3.** Conlin argues that the employment application cannot evidence intentional misrepresentation because he did not sign it and because he has difficulty reading and writing. He testified that Ralph Vallejo filled out one employment application and that his mother filled out another. (Conlin Dep. at 82.) He did not deny that the application was his nor did he indicate that he would have completed it differently. Because it would be unfair for Conlin to benefit from the application and yet not be bound by its representations, Conlin's argument is not compelling. Furthermore, because Conlin apparently made similar representations regarding his work experience to Vallejo orally, the Court must still consider whether the representations were fraudulent.

**4.** Q. What were your job duties as a janitor?
A. Cleaning aisles and keeping the place looking neat, presentable, picking up card-

board, paper, broken merchandise, mopping up spills, anything that would require keeping the aisles clear and safe.
Q. I might have asked you this. How long did you work as a janitor?
A. I don't recall how long that was. From the time they put me onto that duty until the place burned down.
(Conlin Dep. at 58.)
Conlin objects to the admission of the deposition as evidence based on his attempts to modify the testimony. (This objection is not persuasive, however, as Conlin's proposed modifications (*see* Conlin Decl. Ex. C) would substantively alter his testimony. *See Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D.La.1992); *Barlow v. Esselte Pendaflex Corp.*, 111 F.R.D. 404, 406 (M.D.N.C.1986).) Because Conlin's deposition testimony does not support a finding that Conlin misrepresented himself, the Court need not decide this issue.

bric of "warehouseman." (*Id.* ¶ 4.) Consequently, although Conlin's deposition testimony indicates that he performed janitorial duties, it does not require the conclusion that he worked exclusively as a janitor or that he was not a warehouseman.

Next, Conlin continued to work in the warehouse after his reinstatement. Because "[i]t was common ... [at Safeway] to refer to employees who worked under the warehouse contract as 'warehousemen,'" including "order selector[s], loader[s], forklift operator[s], and sanitarian[s]," it was not unreasonable for Conlin to represent that he had worked as a warehouseman after his reinstatement.[5]

Finally, Conlin also submitted a résumé during the application process. The résumé claims 16 years of warehouse experience and elaborates upon the particulars of his experience. In his résumé, Conlin clearly disclosed his janitorial experience. *See* Conlin Decl. Ex. B (noting that his duties required him to "[e]mpty trash bins, dust, mop and sweep warehouse and employee lunchroom areas"). Conlin's résumé reveals that he did not mislead Mission Foods, but rather gave Mission Foods fair notice of his janitorial experience at Safeway.

In sum, Conlin's deposition does not preclude the conclusion that he worked under the general rubric of "warehouseman" both before and after his reinstatement at Safeway and, consequently, that he did not misrepresent his work history on the Mission Foods application or to his supervisor when he claimed 17 years experience as a warehouseman. The fact that during the application process Conlin also submitted a résumé clearly outlining his janitorial duties at Safeway further dispels the allegation that he misrepresented his past experience.[6]

■ The after-acquired evidence doctrine is not meant to protect employers from poor hiring decisions. It is intended to grant them some relief from their discriminatory acts when their initial decision was premised on false information submitted by an applicant. Here, Conlin submitted no false information. He accurately completed the application form and, additionally, submitted a résumé which further detailed his skills.

Because, as a matter of law, Mission Foods cannot demonstrate that Conlin misrepresented himself, Mission Foods' motion for summary judgment predicated upon the doctrine of after-acquired evidence is DENIED.

### B.

### *Retroactive Enforcement of the ADA*

Conlin's second cause of action, based on employment discrimination and retaliation for his complaints of discrimination, implicates both Title I of the ADA, prohibiting employment discrimination, and Title V of the ADA, prohibiting retaliation or coercion based on an individual's exercise of any right accorded by the ADA. 42 U.S.C. §§ 12112 and 12203. Mission Foods argues that Conlin cannot recover for violations that occurred before the effective date of Title I of the ADA. In response, Conlin distinguishes between the effective dates of the different titles of the ADA.

Title I of the ADA, codified at 42 U.S.C. § 12112, prohibits employment discrimination. The text of the ADA explicitly provided the Title I provision would become effective 24 months after the date of its enactment. The ADA was enacted on July 26, 1990; therefore, Title I became effective on July 26, 1992.

Courts considering the issue of retroactivity, including two courts in the Northern District, have refused to apply Title I retroactively to events occurring prior to its effective date. *See Aramburu v. Boeing Co.,* No. 93–4064–SAC, 1993 WL 544567 at *2 (D.Kan. 1993) (collecting cases and concluding that

---

5. Indeed, Mission Foods conceded in oral argument that Safeway did classify Conlin as a warehouseman. Although Mission Foods attempted to salvage its position by noting that its own warehousemen do not perform janitorial work, this observation is irrelevant in determining whether Conlin misrepresented his Safeway experience.

6. Because Mission Foods does not dispute the facts upon which this conclusion is grounded, a further evidentiary hearing on this matter is not required.

"virtually all of the courts considering whether the ADA applies retroactively have concluded that it does not"); *Barraclough v. ADP Automotive Claims Servs.*, 818 F.Supp. 1310, 1312 (N.D.Cal.1993); *Raya v. Maryatt Indus.*, 829 F.Supp. 1169, 1174–75 (N.D.Cal. 1993); *cf. Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

Conlin does not dispute that Title I should not be applied retroactively. Instead, he argues that Title V, which lacks an explicit effective date, became effective on the enactment of the ADA, July 26, 1990.

Title V of the ADA, codified at 42 U.S.C. § 12203, provides that:

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful *by this chapter* or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this chapter.*

42 U.S.C. § 12203 (West 1994) (emphasis added). Although the ADA does not provide an effective date for Title V, Title V is contingent upon the substantive violations of other provisions of the Act, and in this case, Title I.[7] In other words, Mission Foods could not violate Title V by retaliating against Conlin for exercising rights guaranteed him under Title I that had not yet gone into effect.

 Because Title I of the ADA became effective on July 26, 1992 and should not be applied retroactively, and because Title V of the ADA hinges on a Title I violation, Mission Foods' motion for summary judgment is GRANTED with respect to Conlin's second cause of action as to alleged violations of both Titles I and V of the ADA arising before July 26, 1992.

Conlin's present complaint does not make clear the conduct occurring after July 26, 1992 upon which he bases his Titles I and V claims. Thus, Conlin is ORDERED to file an amended complaint to allege specifically the actions of Mission Foods after July 26, 1992 that violate Titles I and V of the ADA.

Accordingly,

**IT IS HEREBY ORDERED** that:

1. Summary judgment is **DENIED** on the ground that the after-acquired evidence doctrine is inapplicable to the facts of this case;

2. Summary judgment is **GRANTED** as to all events contained in the complaint occurring before July 26, 1992, on the ground that the ADA does not apply retroactively; and

3. Plaintiff is to file **within ten days of the issuance of this Order** an amended complaint enumerating the actions of Mission Foods occurring on or after July 26, 1992, that allegedly violate the ADA.

---

7. Titles II and III (which are not implicated here) are not helpful as analogues. Although parts of each became effective upon the ADA's enactment and other parts 18 months after the ADA's enactment, each of these Titles specifically enumerated the effective dates. Moreover, unlike Title V, neither Title II nor Title III is predicated upon violations of other parts of the ADA.