25 F.3d 1047
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Joe CRON, Sara Hunter, Granville Ratcliff, Plaintiffs-Appellees; and
Kenneth Ray, Plaintiff-Cross-Appellant;
v.
John P. Chandler, individually and in his capacity as
Sheriff of Cheatham County, Tennessee; and
CHEATHAM COUNTY, Defendants-Appellants
Cross-Appellees.
 Nos. 93-5015, 93-5155.
 United States Court of Appeals, Sixth Circuit.
 June 10, 1994.
 
 1
 Before: KEITH and SUHRHEINRICH, Circuit Judges; and JOINER, Senior District Judge.*
 
 
 2
 JOINER, Senior District Judge.
 
 
 3
 Defendants, Sheriff John Chandler and Cheatham County, appeal the entry of a preliminary injunction in favor of plaintiffs Joe Cron, Sara Hunter, and Granville Ratcliff, reinstating them to their former positions in the sheriff's department pending trial on the merits. Plaintiff Kenneth Ray cross-appeals the court's denial of preliminary injunction in his favor. All four plaintiffs contend that they were casualties of Sheriff Chandler's campaign for reelection. Cron, Hunter and Ratcliff maintain they were fired or forced to resign due to their political opposition to Chandler; Ray contends that he was fired, not because he engaged in political campaigning, but because he refused to pledge his support to Chandler.
 
 
 4
 We affirm the district court's order with respect to Ratcliff, Hunter and Ray. We vacate the preliminary injunction in favor of Cron, and remand for further proceedings.
 
 I.
 A.
 
 5
 The Cheatham County Sheriff's Department has 51 employees, 20 of whom are deputy sheriffs. When the former sheriff died in the middle of a term of office, Marc Coulon was appointed to replace him, and, during his tenure, promoted Ray to the position of chief deputy where he served as second in command. Coulon also appointed Hunter to supervise dispatchers and be in charge of records. In February 1991, Chandler was appointed to replace Coulon. Chandler did not disturb either of Coulon's appointments, but changed Ray's title to "administrative assistant."
 
 
 6
 A general, non-partisan election for sheriff took place on August 6, 1992. Four candidates, including Chandler, sought the office. Chandler told the department's employees early in the campaign that they were not to be involved in any campaign activity, and also told them that they were free to do as they liked "when they went behind the curtain." The plaintiffs agree that Chandler never threatened them with termination if they did not support him. However, each of them testified that Chandler told him or her individually that he expected loyalty to him and to the department.
 
 Joe Cron
 
 7
 Cron was a deputy sheriff and was employed from September 1987 to August 18, 1992, two weeks after Chandler was reelected. Cron testified that Chandler asked him about his loyalty several times during their joint tenure. When Cron asked Chandler if there was a problem with his job performance, Chandler told him that he was performing his duties very well.
 
 
 8
 Cron was generally known to support another candidate in the sheriff's campaign. He testified that he expressed this support to friends, but denied that he campaigned while on duty. On August 18, Chandler called Cron into his office, told him that he had been hearing "bad things" about his political activities, and presented him with a resignation letter. Cron signed, believing that he would have been fired if he did not. Chandler testified that Cron most likely would have been terminated if he had not resigned.
 
 
 9
 The reason given for Cron's termination was "direct insubordination pertinent to political activity," activity which Chandler admitted was for another candidate. The only campaign activity of which Chandler was aware prior to August 18 was Cron's act of tossing Chandler's campaign cards, on display at a local restaurant, in the trash.[1] However, Cron also transported a civilian friend in his patrol car, while on duty, to the home of another civilian, where the friend campaigned for a candidate for the sheriff's position. Chandler did not learn of this incident until depositions were taken in this case.
 
 Granville Ratcliff
 
 10
 Ratcliff too was a deputy sheriff and was employed from September 1984 to August 18, 1992, when Chandler requested his resignation. Defendants concede that Ratcliff most likely would have been fired if he had not resigned. Ratcliff testified that Chandler had not communicated any problems with his performance prior to requesting his resignation. Chandler's stated reason for the termination was insubordination, i.e., Ratcliff's soliciting votes in the sheriff's campaign. Like Cron, Ratcliff supported a candidate other than Chandler. Ratcliff's sole campaign activity consisted of a comment he made to a complaining witness in a burglary case to the effect that another candidate for office would ensure that midnight deputies would patrol the area. Ratcliff claimed to have made the comment to another deputy, but that officer testified that Ratcliff directed his comment to the witness.
 
 Sara Hunter
 
 11
 Hunter was employed from January 1985 until she was terminated on August 28, 1992, ten days after Cron and Ratcliff resigned. Prior to being fired, Hunter was in charge of records and supervised the dispatchers. In this capacity, Hunter had access to confidential information, apparently beyond that which was routinely available to deputies.
 
 
 12
 The stated reason for Hunter's discharge was insubordination, consisting of her direct or indirect activities in the campaign. Hunter was not involved in any campaign activity, however. Hunter's neighbor had placed signs in favor of other candidates on his property, close to Hunter's property line. In addition, Hunter's 18-year old daughter actively campaigned for one of the candidates. Chandler construed these actions as constituting campaign activity on Hunter's part.
 
 
 13
 Defendants justified Hunter's termination on a number of grounds (e.g., uncooperative attitude, alleged failure to train one of the dispatchers, inadequate data entry practices on the computer, and alleged utilization of her position to delay service of process in a civil suit against her), but the record reflects that these alleged deficiencies were not brought to Hunter's attention prior to her termination.
 
 Kenneth Ray
 
 14
 Ray was fired on June 18, 1992, seven weeks prior to the election, following his failure to report to Chandler after having been absent for a number of days on funeral leave. Ray explained his failure to report, stating that he had been told that Chandler intended to fire him. Ray attributes Chandler's desire to fire him to his refusal to "pledge allegiance" in response to Chandler's inquiries whether he had Ray's support.
 
 
 15
 Ray held the position of administrative assistant, and was second in command in the office. His principal duties consisted of scheduling and maintenance of vehicles. In Chandler's absence, Ray was to "run the department, [and] carry out the policies and procedures of the department[.]" Nonetheless, Ray denied being in a policy-making position, and the person who assumed his position likewise testified that he did not view the position as a political or policy-making one. Chandler, on the other hand, testified that he expected Ray to help Chandler implement policies and procedures, but that Ray did not do so and demonstrated resistance even after Chandler explained the job responsibilities.
 
 B.
 
 16
 Plaintiffs filed suit, contending that they were discharged as a direct consequence of supporting candidates other than Chandler, or, in Ray's case, simply for not supporting Chandler, all in retaliation for exercising their First Amendment rights. Plaintiffs sought immediate reinstatement pending trial and filed a motion for a preliminary injunction. The district court conducted an evidentiary hearing, and made the following findings of fact with respect to Cron, Ratcliff and Hunter:
 
 
 17
 (2) Defendant Chandler effectively fired Plaintiffs Cron and Ratcliff by demanding their resignation, for the reason that the Plaintiffs had campaigned for, or spoken in public regarding, the Cheatham County Sheriff's election and supported a candidate opposing Defendant Chandler. The Court finds that although Plaintiff Cron permitted a citizen to canvas for votes while riding along with him in his patrol car, that this incident played no role in Sheriff Chandler's decision to fire Plaintiff Cron, because the Sheriff learned of it only while preparing for the preliminary injunction hearing.
 
 
 18
 (3) Defendant Chandler fired Plaintiff Hunter for the political activities of her adult daughter, and for the proximity to Plaintiff Hunter's property of posters for candidates opposing Sheriff Chandler. In addition, the Court finds that Plaintiff Hunter occupied a nonconfidential, ministerial position within the Cheatham County Sheriff's Department.
 
 
 19
 The court concluded that Cron, Ratcliff and Hunter were likely to prevail on the merits of their claim, and would suffer irreparable harm if an injunction were not granted because they had suffered direct and intentional retaliation for exercising their constitutionally protected right of expression. The court balanced the plaintiffs' interest in free expression against defendants' right to a workplace free of political tension, and concluded that plaintiffs' interests predominated. Finally, the court credited the plaintiffs' assertions that they could perform satisfactorily and cooperatively if reinstated, and, finding that none of the positions involved qualified as policy-making or confidential, concluded that the public interest would be served by granting the injunction. The court ordered these three plaintiffs immediately reinstated.
 
 
 20
 The court stated that Ray stood on different ground, since he had never campaigned or expressed a preference for a candidate in the sheriff's election. The court found that it was "unlikely that political animus motivated Defendant Chandler to fire Plaintiff Ray, or that Defendant Chandler burdened Plaintiff Ray's First Amendment rights." The court thus concluded that Ray would be unlikely to prevail on the merits of his complaint, and denied his motion for a preliminary injunction.
 
 
 21
 Defendants and plaintiff Ray instituted this timely appeal under 28 U.S.C. Sec. 1292(a)(1).
 
 II.
 
 22
 In determining whether a preliminary injunction is proper, a district court considers: (1) the likelihood of success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. Southern Milk Sales, Inc. v. Martin, 924 F.2d 98, 103 n. 3 (6th Cir.1991). This court reviews a district court's grant or denial of a motion for preliminary injunction for abuse of discretion. In this context, abuse of discretion occurs when the court "relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." Newsom v. Norris, 888 F.2d 371, 373-74 (6th Cir.1989).
 
 
 23
 As recognized by this court in Randall v. Cookeville, No. 92-5689, 1993 WL 94321, 1993 U.S.App. LEXIS 7567 (6th Cir. Mar. 29, 1993) (per curiam):
 
 
 24
 [A] public employer may constitutionally limit the political activity of its public employees. See Broadrick v. Oklahoma, 413 U.S. 601 (1973); United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548 (1973); United Public Workers v. Mitchell, 330 U.S. 75 (1947). Even when off duty and out of uniform, public employees may be restricted in their public political activity in the interests of an efficient government free from hints of corruption, influence, and connection. Letter Carriers, 413 U.S. at 565-66.
 
 
 25
 Id. at * 2, 1993 U.S.App. LEXIS 7567, at * 6 (emphasis added; footnote omitted). While a public employer may decree that all campaign activity is off limits, such an employer may not selectively discipline or discharge its employees based on the content of their speech or the candidate for whom they campaign. This proscription applies regardless of whether the employees in question have a contractual right to employment or serve at the will of their employer.
 
 
 26
 [E]ven though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially his interest in freedom of speech.
 
 
 27
 Perry v. Sinderman, 408 U.S. 593, 597 (1972) (emphasis added).
 
 
 28
 Speech of a public employee is entitled to First Amendment protection if it relates to a matter of public concern. Connick v. Myers, 461 U.S. 138 (1983). A plaintiff alleging retaliation for the exercise of First Amendment rights must convince the trier of fact that the protected speech was a substantial or motivating factor in the decision to penalize him, and that his interest in making the statement outweighs the employer's interest in promoting efficiency in its operations. Boger v. Wayne County, 950 F.2d 316, 322 (6th Cir.1991). If the plaintiff satisfies these requirements, the burden shifts to the employer to show by a preponderance of the evidence that there were other reasons for its adverse action and that it would have taken the same action even if the employee had not spoken. Id. (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).
 
 
 29
 While the majority of public employees enjoy the First Amendment protections described above, there are employees who may be terminated for political reasons if the employer " 'can demonstrate that party affiliation [or sponsorship] is an appropriate requirement for the effective performance of the public office involved.' " Rice v. Ohio Dep't of Transp., 14 F.3d 1133, 1140 (6th Cir.1994), petition for cert. filed, Apr. 26, 1994 (quoting Branti v. Finkel, 445 U.S. 507, 518 (1980)). The contours of the political/policy-making employee category are difficult to state with precision. However, this court has treated the category as a fairly broad one, while cautioning that patronage appointments cannot be made on a wholesale basis. Rice, 14 F.3d at 1141 n. 7, 1142.
 
 
 30
 Defendants contend that the district court erred in granting Cron, Ratcliff and Hunter a preliminary injunction, claiming, first, that these plaintiffs could be discharged for engaging in political activity while on duty; and second, that they are political/policy-making employees who permissibly could be discharged for their lack of political support for Chandler.[2] With respect to Ray's cross-appeal, defendants contend that he did not engage in protected activity, and that he too was a political/policy-making employee who could be discharged for not supporting Chandler.
 
 
 31
 The district court's decision to grant Cron, Ratcliff and Hunter injunctive relief rested on its determination that Chandler retaliated against them, not just because they engaged in political activity, but because they supported a candidate who opposed Chandler in the sheriff's election. This finding is not clearly erroneous, and cannot be disturbed on appeal. Based on this finding, the court properly concluded that Chandler had violated these plaintiffs' First Amendment rights.
 
 
 32
 We are not persuaded that these plaintiffs occupied positions as to which political affiliation was an appropriate consideration. Defendants point to the fact that Hunter supervised the dispatchers and had access to confidential records in support of their claim that she occupied a political position within the department. This simply is not enough. Focusing on both the duties of the position itself, and the position as performed by Hunter, we find no evidence in the record that the records/dispatch supervisor had responsibility for, e.g., formulating or implementing policy; controlling or directing the flow of information to and from the sheriff; or providing meaningful input on issues of significance to the department. See generally Rice, 14 F.3d at 1142 n. 9; Faughender v. City of North Olmstead, 927 F.2d 909, 913-17 (6th Cir.1991). Similarly, we reject defendants' contention that all of the deputy sheriffs are political employees who could be discharged if they did not support Chandler. This argument was not advanced in the district court, and no evidence was introduced in support of the claim.
 
 
 33
 We differ with the district court with respect to its grant of preliminary injunctive relief on only one point: whether Sheriff Chandler and the county can defend their discharge of Cron in reliance on acts not known to them until after the discharge decision was made. The district court was factually correct in concluding that Cron's act of transporting a civilian in his patrol car while on duty could not have played a role Chandler's discharge decision. This does not mean, however, that Cron is or should be insulated from disciplinary action if he in fact violated departmental rules or policies. Evidence of an employee's misconduct, acquired by an employer following an employee's discharge, may bar an employee's claim for relief if the employer can demonstrate that it would have disciplined the employee based on that evidence. McKennon v. Nashville Banner Publishing Co., 9 F.3d 539 (6th Cir.1993), cert. granted, May 23, 1994. Thus, if defendants can establish that Cron would have been discharged based upon his actions, without reference to the protected nature of the activity involved,[3] Cron would not be entitled to relief in this case. The district court cut short the inquiry into Chandler's reliance on the after-acquired evidence, thus precluding the assertion of a potentially relevant defense. For this reason we vacate the preliminary injunction in favor of plaintiff Cron, and remand for further proceedings on this issue.
 
 
 34
 Finally, with respect to plaintiff Ray, we agree with the district court that the record at this stage of the proceedings indicates that Ray is unlikely to prevail on his claim that Chandler fired him because of political animus. We recognize, as urged by Ray, that an employee's decision to remain uncommitted in a campaign is protected by the First Amendment,[4] and reject any implication in the district court's decision to the contrary. However, there is a dearth of evidence, other than Ray's own perceptions, in support of his claim that he was fired because he would not "pledge allegiance" to Chandler. Chandler testified, and Ray admitted, that he talked to Ray regarding Ray's resistance to implementing policies and procedures. Viewing the facts favorably to the plaintiffs as a whole, it appears that Chandler was prepared to tolerate the presence of employees whose overt lack of support for him was known throughout the department, at least until the election had passed. On this record, the district court's finding that political animus did not play a role in Chandler's discharge decision is not clearly erroneous. We conclude that the court properly denied injunctive relief to Ray.
 
 
 35
 The sole question presented on this appeal concerns the propriety of preliminary injunctive relief. The procedural posture of this case has great bearing on our disposition of the particular questions presented. This case will now return to the district court for trial on the merits, at which the parties' claims and defenses can be more fully explored.
 
 
 36
 For the reasons stated, we AFFIRM the order granting injunctive relief to Ratcliff and Hunter, and AFFIRM the order denying injunctive relief to Ray. We VACATE the preliminary injunction in favor of Cron, and REMAND for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Cron testified that he retrieved the cards from the trash and returned them to the counter. The parties dispute whether this incident took place while Cron was on duty
 
 
 [2]
 Defendants also contend that plaintiffs did not suffer irreparable harm because their remedies at law are adequate to compensate their harm. The district court properly rejected this contention in reliance on Newsom v. Norris, 888 F.2d 371, 378 (6th Cir.1989), a decision binding on this court as well. United States v. Gilliam, 979 F.2d 436, 437 (6th Cir.1992), cert. denied, 113 S.Ct. 1856 (1993)
 
 
 [3]
 McKennon, 9 F.3d at 543 n. 7 (employer may not fire an employee for engaging in activities protected under the Age Discrimination in Employment Act, and consequently, cannot rely on after-acquired evidence of such protected activities to justify a discharge decision)
 
 
 [4]
 Wooley v. Maynard, 430 U.S. 705, 714 (1977) ("[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all."); West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 614, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.")