United States Court of Appeals,

Fifth Circuit.

No. 92-1891

Summary Calendar.

Artemio UGALDE, Plaintiff-Appellant,

v.

W.A. McKENZIE ASPHALT CO., et al., Defendants,

W.A. McKenzie Asphalt Co., Defendant-Appellee.

May 12, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before JOLLY, DUHÉ, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Artemio Ugalde filed this suit against his employer, W.A. McKenzie Asphalt Co., after being referred to as a "wetback" by his supervisor. Ugalde brought claims for constructive discharge pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.,* and for intentional infliction of emotional distress. McKenzie Asphalt moved for summary judgment and the district court granted the motion. Ugalde appeals. We hold that Ugalde has failed to present a genuine issue of material fact relating to either of his claims, and we therefore affirm the decision of the district court.

I

Ugalde was employed by McKenzie Asphalt as an operator of an asphalt paving machine. Ugalde is an Hispanic male originally from Mexico. On September 26, 1990, Ugalde was working as an asphalt paving machine operator on a road crew supervised by Bobbie Pope. Pope is alleged to have called Ugalde a "wetback" and asked him to stop operating the paving machine and help other employees shovel. When Ugalde could not find a shovel to use, Pope allegedly told two other employees to let Ugalde use their shovels because they were Americans and did not have to do that type of labor. Ugalde walked off the work site and went to the main office to speak with John McKenzie, who was in charge of employee complaints. Ugalde told McKenzie's secretary that he

was having problems with Pope and threatened to quit; Ugalde did not, however, report that Pope had used racial slurs against him on that day. Furthermore, Ugalde had never complained about Pope on any other previous occasion. Ugalde waited around to speak to McKenzie but instead left the office and did not return to the work site.

Two days later, Ugalde returned to the main office to collect his paycheck. On this occasion, Ugalde spoke with McKenzie but still did not tell him about Pope's alleged racial comments. At this time, McKenzie offered to let Ugalde return to work at a lower rate of pay, but Ugalde declined this offer; according to Ugalde, McKenzie's offer was accompanied by the statement that he would pay Ugalde what he was paying the other Mexicans. About a week later, Jeff McKenzie went to Ugalde's home and offered him a job at the same rate of pay that he had formerly been receiving and one in which Pope would not be his supervisor; Ugalde declined this offer.

Ugalde instead filed a complaint with the Equal Employment Opportunity Commission (EEOC) claiming racial discrimination, a claim which was later denied by the EEOC. Ugalde then filed suit on August 21, 1991, against McKenzie Asphalt for constructive discharge pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.,* and for intentional infliction of emotional distress. Ugalde alleged that McKenzie Asphalt constructively discharged him when it failed to take immediate remedial steps after Ugalde complained of racial slurs made to him. Ugalde also alleged that McKenzie Asphalt intentionally inflicted emotional distress upon him because a supervisor consistently referred to him as a "Mexican" and a "wetback."

McKenzie Asphalt filed a motion for summary judgment, and on September 11, 1992, the district court granted its motion. Ugalde appeals.

II

Ugalde argues that summary judgment was inappropriate because there was sufficient evidence to create a genuine issue of material fact as to whether he was constructively discharged in violation of Title VII and whether McKenzie Asphalt's conduct was extreme or outrageous as required under the common law tort of intentional infliction of emotional distress. In addition, Ugalde argues that it was error for the district court to deny his motion for leave to amend his

complaint to provide for compensatory and punitive damages and a jury trial pursuant to the Civil Rights Act of 1991.

On the other hand, McKenzie Asphalt argues that Ugalde did not act reasonably when he walked off the job without giving it a chance to remedy the situation. McKenzie Asphalt also argues that its conduct was not sufficiently extreme or outrageous to support a claim of intentional infliction of emotional distress. Finally, McKenzie Asphalt argues that the district court correctly denied Ugalde's motion to amend his complaint because the provisions of the Civil Rights Act of 1991 that Ugalde sought to apply do not apply retroactively.

## III

### A

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine factual issue is one that "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. We review the district court's granting of summary judgment *de novo* and affirm if the nonmoving party failed to present sufficient evidence to create a genuine issue. *Palmer v. Fayard,* 930 F.2d 437, 438 (5th Cir.1991).

### B

We first review Ugalde's constructive discharge claim pursuant to Title VII. Ugalde argues that the continuous, pervasive, and deliberate use of racial slurs and other abusive language by McKenzie Asphalt's employee, Pope, was so deficient and unpleasant that a reasonable person in his shoes would have felt compelled to resign. Furthermore, Ugalde argues that any reasonable person would have felt compelled to resign after walking off the job site to complain of harassment and then being denied the opportunity to make the complaint to the person in charge. Ugalde argues that racial slurs alone can be the basis for a constructive discharge claim where a supervisor continuously and deliberately uses racial slurs and other abusive language. In short, Ugalde argues that he has set forth facts that would have made any reasonable person feel compelled to resign.

Ugalde further argues that the district court erred by considering his treatment by McKenzie Asphalt only on the day he walked off the job, and the district court should have instead considered McKenzie Asphalt's treatment of him as a whole. Ugalde further argues that it was error for the district court to find that Pope, his supervisor, was not an agent of McKenzie Asphalt and McKenzie Asphalt could not be held liable for Pope's actions.

C

McKenzie Asphalt argues that Ugalde's allegations do not rise to the level of severe and pervasive harassment necessary to support a claim for constructive discharge. McKenzie Asphalt argues that these alleged ethnic slurs are insufficient to establish a claim of constructive discharge, particularly in a job context such as Ugalde's where rough language may be expected and Ugalde was not singled out for abuse. It also points out that although Pope's alleged comments supposedly were directed to other Hispanic employees in addition to Ugalde, none of these workers quit or threatened to do so. Even if the alleged ethnic slurs were severe and pervasive enough to support a constructive discharge, Ugalde's claim would still fail, McKenzie argues, because he did not give it a chance to address the alleged harassment. A reasonable employee in Ugalde's shoes would not have felt compelled to resign without giving his employee a chance to institute measures to stop the alleged harassment. It further notes that it offered to let Ugalde return to work at his previous rate of pay in a position that would not require him to work with Pope. Ugalde cannot rely on an alleged agency relationship between Pope and it, McKenzie Asphalt asserts, to support a claim that Pope constructively discharged him.

Regarding Ugalde's alternative theory that he was constructively discharged when he returned to pick up his paycheck and was offered another position at a lower rate of pay, McKenzie Asphalt argues that even on this date Ugalde did not report Pope's alleged misconduct. Furthermore, Ugalde concedes he quit two days earlier and therefore on the date he picked up his paycheck Ugalde had no job or position from which he could be constructively discharged.

D

In order to establish that he was constructively discharged, Ugalde must prove that his

working conditions were so difficult or unpleasant that a reasonable person in his shoes would have felt compelled to resign. *Cortes v. Maxus Exploration Co.,* 977 F.2d 195, 200 (5th Cir.1992) (quoting *Landgraf v. USI Film Prods.,* 968 F.2d 427, 429 (5th Cir.1992)). The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into involuntary resignation, then the employer has committed a constructive discharge and is as liable as if it had formally discharged the aggrieved employee. *Jurgens v. EEOC,* 903 F.2d 386, 390 (5th Cir.1990). To find that a constructive discharge has occurred, the trier of fact must be satisfied that the working conditions to which the employee was subjected were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (5th Cir.1980). The burden is on the employee to prove constructive discharge. *Boze v. Branstetter,* 912 F.2d 801, 804-05 (5th Cir.1990).

After reviewing the record, we do not find evidence to suggest that a reasonable person in Ugalde's position would have felt compelled to resign. Aside from Ugalde's conclusory accusations, Ugalde's only evidence of discriminatory conduct is that one supervisor employed by McKenzie Asphalt referred to him and other Hispanic employees as "Mexicans" and "wetbacks." Ugalde attempted to complain about these comments on only one occasion. Even at that time, Ugalde did not mention that the supervisor had used ethnic slurs. When Ugalde was not immediately given a chance to meet with the head of the company, he walked off the job; it was at this point Ugalde's constructive discharge claim arose. Under the circumstances presented in this case, "a reasonable employee instead of resigning would first have pursued either or both of two courses—completed the internal grievance procedure, or filed a complaint with the EEOC." *Boze,* 912 F.2d at 805.

Assuming all facts in a light most favorable to Ugalde, we conclude that his working conditions were not so difficult or unpleasant that a reasonable employee in his shoes would have felt compelled to resign. For this reason, the district court did not err in granting summary judgment to McKenzie Asphalt as a matter of law on Ugalde's Title VII claim.

IV

We now turn to Ugalde's claim of intentional infliction of emotional distress. The district

court clearly did not err in granting summary judgment on this claim to McKenzie Asphalt. To prevail on a claim of intentional infliction of emotional distress, Texas law requires a finding of four elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1989). Conduct is considered to be "outrageous" if it surpasses "all bounds of decency" such that it is "utterly intolerable in a civilized community." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d). Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. *See Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1143 (5th Cir.1991). Even conduct which may be illegal in an employment context may not be the sort of conduct constituting extreme and outrageous conduct. *Id.*

The only conduct alleged to have been outrageous and extreme is that a supervisor referred to Ugalde over a period of time as a "Mexican" and as a "wetback." Although we condemn this conduct, we simply cannot say that it rises to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Accordingly, the district court did not err in granting summary judgment as a matter of law on this issue.

V

We find that the district court was correct in its determination that Ugalde has failed to present a genuine issue of material fact regarding either of his claims.[1] The district court therefore did not err in granting McKenzie Asphalt summary judgment and dismissing Ugalde's claims of constructive discharge and intentional infliction of emotional distress.

AFFIRMED.

---

[1]Because we affirm the district court's granting of summary judgment to McKenzie Asphalt, we need not reach Ugalde's third issue, *i.e.,* whether the district court should have allowed him to amend his pleadings to provide for a jury trial and compensatory and punitive damages pursuant to the Revised Civil Rights Act of 1991.