**John E. McCRAY**

v.

**DPC INDUSTRIES, INC. d/b/a Dixie Petro–Chem, Inc. and Terry Lee Pierce.**

**No. 2:94 CV 45.**

United States District Court,
E.D. Texas,
Marshall Division.

Feb. 2, 1995.

James Walter Hill, Austin, TX, Adam Lichtenstein, Marshall, TX, for plaintiff.

Richard Roland Brann, Houston, TX, Edward Lawrence Merritt, Longview, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

HANNAH, District Judge.

Pending before the court are two motions for summary judgment filed by Defendants DPC Industries, Inc. and Terry Lee Pierce. Plaintiff, John E. McCray, filed this employment discrimination suit against Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.[1] Plaintiff also alleges a state law claim of intentional infliction of emotional distress. DPC's Motion for Summary Judgment is granted. Pierce's Motion for Summary Judgment is granted in part and denied in part.

## I. BACKGROUND

Plaintiff, a black male, was employed at DPC's Longview, Texas facility. The principal business of this facility includes the repacking and distribution of chlorine, the manufacturing of bleach, and the distribution of other industrial chemicals. The work at this facility can be dangerous as it involves hazardous chemicals. DPC has Rules of Conduct that govern employees' on-the-job behavior and require them to wear safety gear in work areas. Each employee receives a copy of the rules as well as an employee handbook that contains another copy of the rules. DPC employees, including Plaintiff, are trained and periodically retrained on safety regulations and precautions and are also tested on safety rules and procedures. After a series of rules violations,[2] Plaintiff

---

1. Plaintiff also asserts a hostile work environment claim which is not the subject of Defendants' Motions for Summary Judgment.

2. The rules violations listed by Defendant DPC are as follows:

    (1) *Sleeping on the Job:* On January 16, 1992, Plaintiff was reprimanded for sleeping during working hours. This was the second time Plaintiff violated the rule forbidding loafing on the job.

    (2) *Improper Filling of Drums:* On April 9, 1992, DPC's Little Rock facility returned two drums of toluene it had received from the Longview facility due to customer complaint. Plaintiff's initials were on the drums, indicating he had filled them. Upon inspection, DPC discovered Plaintiff had filled the drums with methanol, not toluene. Metha-

was terminated on July 27, 1992. Plaintiff alleges that prior to his termination, DPC employee Terry Pierce pulled a gun on Plaintiff in the parking lot driveway at DPC Industries.

Plaintiff wrote a letter to Charlcye Sells, the administrative manager for DPC, and William Steil, a DPC vice president, admitting he had violated DPC's Rules of Conduct but claiming that other employees had also engaged in misconduct. DPC conducted an investigation of Plaintiff's claims and as a result of the investigation terminated Charles Mosley for falsification of his job application and Terry Pierce for his role in the altercation with Plaintiff. DPC also terminated Charles Harding, the operations manager, because the reported acts of employee misconduct occurred on his watch. Mosley, Harding, and Pierce are all Caucasian.

## II. SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if it can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted. *Id.* at 321–25, 106 S.Ct. at 2551–53. A party opposing such a summary judgment motion may not rest upon mere allegations of his pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Summary judgment is not a "disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554. When ruling on a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Hansen v. Continental Insur. Co.*, 940 F.2d 971, 975 (5th Cir.1991).

## III. DEFENDANT DPC, INC.'S MOTION FOR SUMMARY JUDGMENT

### A. *After–Acquired Evidence Doctrine*

■ Defendant asserts as its first ground for summary judgment that the after-acquired evidence doctrine absolves it of all liability. Defendant maintains that after Plaintiff filed suit, it discovered Plaintiff lied

---

nol is a hazardous substance and this incident could have resulted in a serious injury to DPC's employees or customers. Plaintiff was warned that further violations could result in termination.

(3) *Failure to Wear Proper Safety Equipment:* On November 26, 1991, Plaintiff was reprimanded after transferring phosphoric acid from large to small drums wearing no protective clothing other than goggles and gloves. On June 22, 1992, Plaintiff was again observed filling caustic drums wearing no protective clothing other than an apron and consequently written up and suspended for three days without pay. Plaintiff was advised that any more violations would result in termination.

(4) *Damaging Company Property:* On July 20, 1992, Plaintiff smashed a forklift into an overhead crane support, knocking it loose from its base and creating property damage in violation of Rule 5. Plaintiff failed to report the accident to his supervisor in violation of Rule 8. Plaintiff was also reported by employees as racing at full speed across the loading dock in a forklift, carrying two drums of flammable liquids which flew off the forklift and were badly damaged.

(5) *Pumping Flammable Liquids Against a Closed Valve:* On July 21, 1992, Plaintiff pumped highly flammable liquid from a storage tank into a tank truck without first opening the valve on the truck, causing the pump to overheat. A description of the incident was placed in Plaintiff's file.

(6) *Fighting with Co–Workers:* On July 24, 1992, Plaintiff confronted his co-worker, Terry Pierce, about the accuracy of Plaintiff's timecard. The two argued, Plaintiff called Pierce a liar, Pierce got up and pushed Plaintiff, and Plaintiff punched Pierce in the jaw.

on his application regarding past convictions and reasons for leaving previous employers; such misrepresentations are immediate grounds for termination. Thus, according to Defendant, had it known of Plaintiff's misrepresentations, Plaintiff would have been terminated immediately or never hired.

In its pure form, the after-acquired evidence doctrine is a complete defense to an employee's discrimination claims. Sometimes referred to as the "Summers Rule", named after the seminal case *Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700 (10th Cir.1988), the doctrine mandates

> judgment as a matter of law for an employer charged with discrimination if evidence of the plaintiff employee's misconduct surfaces at some time after the termination of the employee, and the employer can prove it would have fired the employee on the basis of the misconduct if it had known of it.

*Kuchler v. Bechtel Corp.,* 855 F.Supp. 177 (E.D.Tex.1994) (recognizing the after acquired evidence doctrine). The Fifth Circuit has yet to directly address the issue, and much dissension existed among the federal circuits as to whether the doctrine should apply at all during the liability stage or whether the doctrine should only apply at the remedies stage of litigation. *Compare Welch v. Liberty Machine Works, Inc.,* 23 F.3d 1403 (8th Cir.1994); *O'Driscoll v. Hercules Inc.,* 12 F.3d 176 (10th Cir.1994); *McKennon v. Nashville Banner Publishing Co.,* 9 F.3d 539 (6th Cir.1993), *cert. granted,* — U.S. —, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994); *Smallwood v. United Air Lines, Inc.,* 728 F.2d 614 (4th Cir.), *cert. denied,* 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984) *with Mardell v. Harleysville Life Ins. Co.,* 31 F.3d 1221 (3d Cir.1994); *Kristufek v. Hussmann Foodservice Co., Toastmaster Division,* 985 F.2d 364 (7th Cir.1993); *Wallace v. Dunn Construction Co.,* 968 F.2d 1174 (11th Cir. 1992), *vacated pending rehearing en banc,* 32 F.3d 1489 (1994).

On January 23, 1995, the United States Supreme Court reversed the Sixth Circuit

decision in *McKennon v. Nashville Banner Publishing Co.,* 9 F.3d 539 (6th Cir.1993), *cert. granted,* — U.S. —, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994), holding that an employee discharged in violation of the ADEA is not barred from all relief when, after her discharge, her employer discovers evidence of wrongdoing that, in any event, would have led to her termination on lawful and legitimate grounds had the employer known of it. — U.S. —, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Writing for a unanimous court, Justice Kennedy explained that such after-acquired evidence is not a complete bar to recovery because the purposes of the ADEA's remedial provisions are to compensate employees for injuries caused by prohibited discrimination and to deter employers from engaging in such discrimination. Such purposes would be thwarted if after-acquired evidence of wrongdoing barred all relief. The ADEA and Title VII share common substantive features and also a common purpose: "the elimination of discrimination in the workplace." *Id.* at —, 115 S.Ct. at 883 (quoting *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979)). The Supreme Court holding in *McKennon* applies equally to the discrimination claims in the case at bar.

The *McKennon* Court continued by explicating how after-acquired evidence of an employee's wrongdoing can be used during the remedial stage of litigation.

> Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.

*McKennon,* — U.S. at —, 115 S.Ct. at 885. Assuming that an employer has proven that it would have discharged an employee on the basis of after-acquired evidence of misconduct had it known of it,[3] as a general rule neither reinstatement nor front pay is an appropriate remedy. *Id.* With respect to backpay, the "beginning point in the trial

---

**3.** A factual dispute may arise as to whether an employer would have terminated an employee based upon misconduct had the employer known

of it. *See, e.g., Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29 (2d Cir.1994).

court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered." *Id.* The court may also take into account "extraordinary equitable circumstances" that affect the legitimate interests of either party. *Id.* Not unmindful of the concern that employers might routinely undertake extensive discovery into an employee's background or job performance, especially once a discrimination complaint has been made, the Court concluded that a court's authority to award attorney's fees and impose Rule 11 sanctions should deter most abuses.

Defendant's Motion for Summary Judgment on the basis of after-acquired evidence of wrongdoing is unavailing.

## B. *Title VII*

### 1. *Summary Judgment Standard*

In order to prevail in a Title VII discrimination suit, a plaintiff must make out a *prima facie* case of discrimination, which creates a presumption of discrimination. At that point, defendant must come forward with a legitimate, non-discriminatory reason for the decision. If defendant articulates such a reason, then plaintiff must prove that the proffered reason was a pretext for discrimination. *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). At all times Plaintiff bears the ultimate burden of proving that DPC intentionally discriminated against him because of race. *Id.*

To establish pretext, Plaintiff can show that the reason articulated by Defendant was untrue as a matter of fact or was a mere cover or pretext for illegal discrimination. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2747;[4] *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Moore v. Eli Lilly & Co.,* 990 F.2d 812 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993). "Stated another way, the plaintiff may prove pretext by 'either showing that a discriminatory reason motivated the defendant or by showing that the proffered reason is unworthy of credence.'" *Id.*

### 2. *Summary Judgment Evidence*

■ In support of its Motion for Summary Judgment, Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's discharge. Defendant maintains that it discharged Plaintiff for committing safety and other violations of DPC's Rules of Conduct. *See supra* note 2. The violations include improperly filling drums with a hazardous chemical, engaging in unsafe procedures, failing to wear proper safety equipment, recklessly damaging company property, and engaging in confrontations with co-workers. It is now incumbent upon Plaintiff to prove that Defendant's proffered reasons are pretextual. In an effort to do so Plaintiff points to four pieces of summary judgment evidence: (1) in the deposition of DPC administrative manager Charlcye Sells, Sells admits that other employees were not being written up for violations which Plaintiff was written up for; (2) Sells admitted that although misrepresentations on employee applications are cause for termination, a misrepresentation on an application may be passed over or waived; (3) DPC did not terminate co-workers Bill Steil (over 40 years old) or Renee Creson (female) even though those two employees

---

4. Defendant argues that to establish pretext a plaintiff must show that *both* the reason was false and the reason was racially motivated, citing *St. Mary's v. Hicks,* —— U.S. at ——, 113 S.Ct. at 2742. This is not entirely accurate. The Court in *St. Mary's* relied upon *Burdine* which expressly provided that the plaintiff "may succeed ... either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." 450 U.S. at 256, 101 S.Ct. at 1095.

*St. Mary's* merely states that once the defendant carries the burden of production by articulating a nondiscriminatory reason for its actions, the plaintiff then has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that race was, which is the ultimate burden of persuasion plaintiff bears. A plaintiff can show the proffered reason was not the true reason (or pretext) either by showing the reason is unworthy of credence or by showing that a discriminatory reason motivated the defendant.

also had violated company policy; and (4) two white employees, Terry Pierce and Charles Harding, would have received preferential treatment in their terminations in that DPC would not have contested their unemployment benefits even though the firing was for cause. Upon closer examination of the summary judgment evidence, the court concludes that Plaintiff has not met its burden of proving pretext.

With respect to Plaintiff's first assertion that Sells admitted other employees were not being written up toil the same violations Plaintiff was written up for, Plaintiff points to the following deposition excerpt:

> Answer (Sells): We thought that perhaps—looking at it when we finally got his write-up, it looked to us like he had discovered that other employees in the Longview office were not being written up for violations. Because his memo says to John McCray that he will reinstate the three days if he finds that other people have gotten by with things Mr. McCray was written up for. And we ultimately learned he did do that.
>
> Question: That he ultimately reinstated—
>
> Answer: Yeah, He changed it—
>
> Question: —three days' pay?
>
> Answer: It came out as funeral leave. That's all we can find anywhere in the record.

Deposition of Charlcye Sells pp. 130–31. Assuming the deposition testimony refers to the June 22, 1992 write-up and suspension for three days for failure to wear proper safety equipment, *see supra* note 2, and is to be considered an admission that prior to June 22, 1992 others were not being written up for similar violations, it fails to show that Defendant's articulated reason for discharging Plaintiff was pretextual because Defendant points to violations committed by Plaintiff after June 22, 1992, including damaging company property on July 20, 1992, pumping flammable liquids against a closed valve on July 21, 1992, and fighting with co-workers on July 24, 1992. The deposition testimony also fails to show that the decision not to write up other employees who allegedly committed violations was motivated by race. Moreover, the actions of Defendant in rein-

stating Plaintiff with three days' pay upon discovering unequal treatment was a proper remedial action to take at that point in time.

Secondly, Plaintiff argues that Sells admitted that although misrepresentations on employee applications are cause for termination, a misrepresentation on an application may be passed over or waived. The statement by Sells does not show that the reasons enunciated by Defendant for terminating Plaintiff were pretextual. The statement may create a material fact question with respect to the issue of whether Plaintiff would have been terminated for the misrepresentations on his employment application. However, that issue regarding after-acquired evidence is only relevant at the remedies stage of litigation. Plaintiff was not terminated for any misrepresentations he made on his application for employment, so it is irrelevant at the summary judgment stage to raise factual disputes regarding after-acquired evidence.

Next, Plaintiff alleges that DPC did not terminate co-workers Bill Steil (over 40 years old) or Renee Creson (female) even though those two employees also had violated company policy. The evidence Plaintiff submits for that proposition is the following:

> Question: But you don't agree with me that there were exceptions made for Bill Steil, who was over 40, he just got disciplined; and Renee Creson, she was a female, she just—she had nothing done to her . . .?
>
> Answer: The circumstances were not the same in any of those cases.

Deposition of Charlcye Sells at 123. This evidence will not suffice to meet Plaintiff's burden of showing pretext. To the contrary, the evidence seems to indicate that Bill Steil and Renee Creson are *not* similarly situated with the Plaintiff. In any event, much is unclear as to the types of violations Steil and Creson allegedly committed. The evidence fails to show that either the reason articulated by Defendant was false or that it was racially motivated. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2747.

Finally, Plaintiff asserts that two white employees, Terry Pierce and Charles Harding, would have received preferential treat-

ment in their terminations in that DPC would not have contested their unemployment benefits even though the firing was for cause. However, Plaintiff does not assert that his unemployment benefits are being contested. Additionally the assertion that Defendant would have chosen not to contest unemployment benefits is speculative, as Pierce and Harding were given the opportunity to resign, and hardly shows that the reason for termination articulated by the Defendant was false or racially motivated. *See* Deposition of Charlcye Sells at 123–24.

Defendant DPC Industries, Inc.'s Motion for Summary Judgment on the Title VII discrimination claim is well taken and hereby granted.

## C. *Section 1981*

■ When Title VII and section 1981 claims are asserted as bases for relief, the same elements of proof are required for both actions; thus the same analysis for both causes of action applies. *See Anderson v. Douglas & Lomason Co., Inc.,* 26 F.3d 1277 (5th Cir.1994), *petition for cert. filed,* 63 USLW 3477 (Dec. 8, 1994); *Flanagan v. Aaron E. Henry Community Health Servs. Ctr.,* 876 F.2d 1231, 1233 (5th Cir.1989). For the reasons stated in the previous section regarding Plaintiff's Title VII claim, Defendant's Motion for Summary Judgment on Plaintiff's section 1981 claim is hereby granted.

## D. *Intentional Infliction of Emotional Distress*

■ In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme and outrageous"; (3) the actions of the defendant caused the plaintiff emotional distress: and (4) the resulting emotional distress was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993). Conduct is considered outrageous if it surpasses "all bounds of decency" such that it is "utterly intolerable in a civilized community." *Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239 (5th Cir.1993). Even conduct which may be illegal in an employment context may

not be the sort of conduct constituting extreme and outrageous conduct. *Id.*

Plaintiff alleges three events as the basis of its claims for intentional infliction of emotional distress. First, Defendant DPC's supervisory personnel failed to act to address a potentially explosive situation between Plaintiff and co-defendant Terry Pierce. Secondly, Pierce and other co-workers shouted racial epithets at Plaintiff; finally, Pierce threatened Plaintiff's life by pointing a gun at him in the DPC parking lot driveway. Defendant counters that its conduct was not extreme and outrageous and that the resulting emotional distress was not severe.

■ Plaintiff's claim that co-workers made racial slurs and jokes will not support a claim for intentional infliction of emotional distress. The Fifth Circuit's opinion in *Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239 (5th Cir.1993), is instructive on this point. In *Ugalde* the alleged extreme and outrageous conduct was the supervisor's reference to Ugalde as a "Mexican" and a "wetback". The Court made clear that liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. Although the court does not condone such conduct by co-workers, we cannot say that it rises to the level of extreme and outrageous conduct necessary, to support a claim for intentional infliction of emotional distress under Texas law.

■ Neither can Plaintiff succeed on his intentional infliction of emotional distress claim against DPC based upon the acts of Terry Pierce. Before liability will be imposed on an employer for the wrongful acts of its employee, a plaintiff must show that the employee's acts (1) fall within the scope of his general authority; (2) are in furtherance of the employer's business; and (3) are for the accomplishment of the object for which the employee was hired. *See Kendall v. Whataburger, Inc.,* 759 S.W.2d 751, 754–55 (Tex.App.—Houston [1st Dist.] 1988, *no writ*). It is not ordinarily within the scope of an employee's authority to commit an assault on a third person. Usually assault is the expression of personal animosity and is not for the purpose of carrying out the em-

ployer's business. *See Texas & Pac. Ry. Co. v. Hagenloh,* 151 Tex. 191, 197–98, 247 S.W.2d 236 (1952). The prime example where liability may extend to the employer is where the employee's duty is to guard the employer's property and to protect it from trespassers; there the nature of employment necessarily involves the use of force in furtherance of the employer's business and using greater force than necessary may make the employer liable.

■■■■ The Court finds that the acts of Pierce were not within the scope of his employment and were not in furtherance of the employer's business or for the accomplishment of the object for which Pierce was hired. *See Tierra Drilling Corp. v. Detmar,* 666 S.W.2d 661 (Tex.App.—Corpus Christi 1984, *no writ*) (holding that supervisor of a rig who hit co-worker with a claw hammer during lunch on the employer's premises was not acting within scope of his employment or in pursuance of his duties or in the furtherance of employer's business). Pierce's duties at DPC Industries in no way encompass engaging in physical force against an employee or third party. Further, the court finds that any alleged failure by Defendant DPC's supervisory personnel to act to address a potentially explosive situation between Plaintiff and his co-workers does not rise to the level of extreme and outrageous conduct under the circumstances of this case.

■■■■ In any event Plaintiff's claim for intentional infliction of emotional distress must fail as a matter of law because Plaintiff has failed to establish that his emotional distress was severe. A plaintiff may recover under this tort only if his or her emotional distress is so severe that no reasonable person could be expected to endure it. *See Benavides v. Moore,* 848 S.W.2d 190, 195–96 (Tex.App.—Corpus Christi 1992, *writ denied*). Severe emotional distress does not include mere worry, anxiety, vexation, embarrassment or anger. *Regan v. Lee,* 879 S.W.2d 133, 136 (Tex.App.—Houston [14th Dist.] 1994, *no writ*). As evidence of severe emotional distress, Plaintiff alleges suffering

from anxiety and difficulty falling asleep. Plaintiff also claims he experienced trauma and fright due to the life-threatening actions of Pierce. Plaintiff does not appear to have sought treatment for any distress suffered. The Court concludes that any distress suffered by Plaintiff is not severe as a matter of law so as to allow recovery for intentional infliction of emotional distress. Defendant's motion for summary judgment on this claim is granted.

## IV. DEFENDANT PIERCE'S MOTION FOR SUMMARY JUDGMENT

### A. *After–Acquired Evidence Doctrine*

As discussed previously with respect to Defendant DPC Industries, Inc.'s Motion for Summary Judgment, the after-acquired evidence doctrine cannot be used at the summary judgment stage to absolve a defendant of liability. Therefore summary judgment on this basis must be denied.

### B. *Title VII*

As Defendant Pierce points out and Plaintiff concedes, Pierce cannot be held personally liable under Title VII as a matter of law. *See Grant v. Lone Star Co.,* 21 F.3d 649, 651 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994). *Grant* makes clear that individual supervisors cannot be held liable for employment discrimination because they do not meet the statutory definition of "employer" under Title VII.[5] Defendant's Motion for Summary Judgment with respect to Plaintiff's Title VII claim is granted.

### C. *Section 1981*

Defendant's sole basis for summary judgment on Plaintiff's section 1981 claim is the after-acquired evidence doctrine. As previously discussed, after-acquired evidence of wrongdoing will not absolve a defendant of liability at the summary judgment stage; therefore summary judgment must be denied.

---

5. Whether Pierce is a supervisor or co-worker is a contested issue of fact. For purposes of Title VII liability under this Motion for Summary Judgment, it is irrelevant because in any event, Pierce is not an "employer".

D. *Intentional Infliction of Emotional Distress*

As previously stated, in order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme and outrageous"; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993).

Defendant argues that Plaintiff has failed to establish that his emotional distress was severe. A plaintiff may recover under this tort only if his or her emotional distress is so severe that no reasonable person could be expected to endure it. *See Benavides v. Moore,* 848 S.W.2d 190, 195 (Tex.App.—Corpus Christi 1992, *writ denied* ). Severe emotional distress does not include mere worry, anxiety, vexation, embarrassment or anger. *Regan v. Lee,* 879 S.W.2d 133, 136 (Tex. App.—Houston [14th Dist.] 1994, *no writ* ). As evidence of severe emotional distress, Plaintiff alleges suffering from anxiety and difficulty falling asleep. Plaintiff also claims he experienced trauma and fright due to the life-threatening actions of the Defendant. Plaintiff does not appear to have sought treatment for any distress suffered. The Court concludes that any distress suffered by Plaintiff is not severe as a matter of law so as to allow recovery for intentional infliction of emotional distress. Defendant's motion for summary judgment on this claim is granted.

THEREFORE it is hereby ordered that Defendant DPC Industries, Inc.'s Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that Defendant Terry Lee Pierce's Motion for Summary Judgment is GRANTED with respect to the Title VII and intentional infliction of emotional distress claims and DENIED with respect to the section 1981 claim.