**John E. McCRAY, Plaintiff,**

v.

**DPC INDUSTRIES, INC. d/b/a Dixie Petro–Chem, Inc. and Terry Lee Pierce, Defendants.**

**Civil Action No. 2–94 CV 45.**

United States District Court,
E.D. Texas,
Marshall Division.

April 12, 1996.

Adam Van Lichtenstein, Jones & Lichtenstein, Marshall, TX, James Walter Hill, Longview, TX, Ricky D. Green, Law Office of Ricky D. Green & Associates, Dallas, TX, Keith W. Smith, Law Office of Ricky D. Green, Dallas, TX, for John E. McCray.

Richard Roland Brann, Baker & Botts, Houston, TX, for DPC Industries, Inc.

Edward Lawrence Merritt, Harbour Kenley Boyland Smith & Harris, Longview, TX, for Terry Lee Pierce.

## MEMORANDUM OPINION AND ORDER

JOE J. FISHER, District Judge.

Pending before this Court are the second motion for summary judgment filed by defendant DPC Industries, Inc. ("DPC") and the second motion for summary judgment filed by defendant Terry Lee Pierce ("Pierce"). Plaintiff John E. McCray ("McCray") filed this employment discrimination suit against Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. The defendants previously moved for summary judgment on some of McCray's claims, and those motions were granted. See McCray v. DPC Industries, Inc., 875 F.Supp. 384 (E.D.Tex.1995). The defendants now seek summary judgment on the remaining claims. After careful consideration of the facts, the applicable law and the arguments of counsel, this Court GRANTS both motions for summary judgment.

## I. Background Facts Common to Both Summary Judgment Motions

McCray, a black male, was hired at DPC's Longview, Texas facility in May 1991. He was discharged in July 1992. For most of McCray's tenure at DPC, Defendant Pierce was McCray's foreman. Pierce reported to Charles Harding, who was the DPC–Longview operations manager.

McCray alleges that shortly after his employment at DPC began, he was subjected to racial slurs, remarks and jokes. Specifically, McCray claims that in June 1991, a DPC truck driver named Bill Johnson told a racial joke in his presence. McCray further claims that in July 1991, James Yarbrough, another DPC truck driver, became angry with McCray and called him a "God damned nigger," and that in July or August 1991, Pierce twice told a racial joke about Rodney King in his presence.

In August 1991, McCray complained to Charles Harding about the racial slurs. Harding then called a meeting of the DPC–Longview employees and told the employees that racial jokes, epithets and comments were improper and that the employees were not to engage in such conduct. Harding also threatened any employee who made racial remarks with a three-day suspension without pay. After the meeting, McCray never reported another racial slur or joke to Harding.

Despite McCray's failure to report any further racial remarks or jokes to management, he alleges that Pierce called him "son" three or four times during the year that McCray worked at DPC. McCray claims that during that same time frame, Pierce called him "black yankee" and insulted Jesse Jackson, Malcolm X and Martin Luther King, Jr. four or five times. McCray testified in his deposition that the insulting comments about Jesse Jackson, Malcolm X and Martin Luther King, Jr. were made in the context of political discussions during Jackson's presidential campaign.

On July 7, 1992, McCray wrote a letter to William Steil, a DPC vice president in Longview. Steil received the letter on July 9, 1992. In the letter, McCray complained about various workplace issues such as the distribution of overtime opportunities and misconduct allegedly engaged in by his co-workers. McCray's letter also mentioned Pierce's Rodney King joke and the truck drivers' racial remarks.

After reading the letter, Steil immediately called Harding and Pierce in to discuss McCray's allegations. That meeting lasted approximately two hours. Steil was unable to determine from this discussion that McCray's complaints had merit, but he continued to investigate McCray's claims. Steil

called McCray into his office, and for more than three hours they discussed McCray's charges point by point. After this meeting, Steil was still unable to determine that McCray's allegations had any merit. Nevertheless, Steil continued his investigation.

The morning after his meetings with Harding, Pierce and McCray, Steil spoke to McCray's co-workers, asking them whether they had ever used racial epithets or told racial jokes at work, or whether they had witnessed anyone else doing so. Each employee denied having engaged in or witnessed such conduct. Steil instructed the employees that racist jokes and epithets were a violation of DPC policy and prohibited. However, having uncovered no evidence that any employee had done the things McCray claimed, Steil had no basis to take disciplinary action against anyone.

During his meeting with Steil, McCray had requested an opportunity to drive a forklift and load and unload tank trucks. Steil informed Harding and Pierce about McCray's request and asked them whether McCray had received the training necessary to perform these jobs. Harding and Pierce replied that although McCray had received the appropriate training, they had been reluctant to let him undertake such work in light of his poor safety and work record.[1] Steil instructed them to give McCray a chance to drive the forklift and load and unload chemicals from the tank trucks. McCray was therefore assigned to do those tasks.

Soon thereafter, McCray crashed the forklift into an overhead crane support, shearing four bolts and knocking the crane support loose from its base. This accident created a safety hazard, property damage and violated DPC's rules of conduct. McCray also failed to report the accident, an additional breach of DPC's rules of conduct.

Employees also reported seeing McCray speeding across the loading dock in a forklift, carrying two drums of flammable liquid. When McCray hit a rough spot on the dock, the drums flew off the forklift, fell to the ground below the dock and were badly damaged. In addition, an employee reported seeing McCray using the forklift to push a metal drum full of flammable liquid across the cement dock, causing sparks to fly. McCray's conduct violated DPC's rules against damaging company property, as well as the rules regarding driving at safe speeds while on the DPC premises and performing job duties in a safe manner.

The day after McCray wrecked the forklift, he was attempting to load a flammable liquid into a storage tank. He began pumping the liquid from a tank truck into the storage tank without first opening the valve on the tank. This caused the pump to overheat, which, due to the flammable nature of the liquid, created a risk of explosion or fire. This conduct constituted a violation of DPC's rules forbidding careless violations of safety regulations and requiring employees to work in a safe manner.

Finally, on July 24, 1992, McCray confronted Pierce about the accuracy of McCray's time card. The two men argued and, during the argument, McCray called Pierce a "liar." Pierce then poked McCray in the chest, and McCray responded by punching Pierce in the face. This altercation was a violation of DPC's rules of conduct, which specifically prohibit fighting. DPC believed that McCray's unsafe work habits posed a threat to himself and his co-workers, and his altercation with Pierce was the last straw. DPC therefore discharged McCray on July 27, 1992.

Pierce was also disciplined for his participation in the altercation with McCray. Following the altercation, Steil reprimanded Pierce in writing for fighting with McCray, stating that his conduct was considered serious and could lead to termination. Steil also told Pierce that DPC was taking the matter under advisement and would inform Pierce of any disciplinary action it considered appropriate to the offense. DPC then investigated Pierce's conduct further and, pending its determination of the appropriate disciplinary action to take, it reduced Pierce's hours. DPC then decided to discharge Pierce, which it did in August 1992.

---

1. McCray's poor performance record is discussed in *McCray,* 875 F.Supp. at 389.

## II. Summary Judgment Standard.

Summary judgment is not a "disfavored procedural shortcut, but rather ... an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citation omitted). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11; *see also Lewis v. Glendel Drilling Co.*, 898 F.2d 1083, 1088 (5th Cir.1990), *cert. denied*, 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991).

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrates the absence of a genuine issue for trial." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987). Where the moving party has met its Rule 56(c) burden, the non-movant "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Ind Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted); *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Leonard*, 828 F.2d at 294. To sustain this burden, the non-moving party must produce evidence that would be admissible at trial. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992). In deciding a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## III. Analysis of McCray's Claims

### A. The Title VII and § 1981 Hostile Work Environment Claim

Defendants are entitled to summary judgment on McCray's claim that they subjected him to a racially hostile work environment in violation of Title VII and § 1981.

#### 1. *Pierce is not individually liable under Title VII.*

■ Title VII imposes liability only upon "employers" who violate its provisions. *See* 42 U.S.C. § 2000e–2. Pierce, as an individual employee of DPC, does not meet the statutory definition of "employer" under Title VII. *See id.* § 2000e(b); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994). McCray conceded this fact in response to Pierce's motion for summary judgment on McCray's Title VII discriminatory discharge claim. *See McCray*, 875 F.Supp. at 392. Accordingly, Pierce is entitled to summary judgment on Plaintiff's Title VII hostile work environment claim. Pierce is also entitled to summary judgment on McCray's § 1981 hostile work environment claim for the reasons discussed below.

#### 2. *No hostile work environment existed.*

■ To establish a *prima facie* case of "hostile work environment" based on race, a plaintiff must show something more than that he was treated badly and that he is black. *Jennings v. Uniroyal Plastics Inc.*, 50 Fair Empl.Prac.Cases (BNA) 639, 646–47, 1989 WL 125601 (N.D.Ind.1989). Rather a plaintiff must prove that: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his race; (4) the harassment affected a term, condition, or privilege of employment; and (5) respondeat superior. *See Bivins v. Jeffers Vet Supply*, 873 F.Supp. 1500, 1507 (M.D.Ala.1994); *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir.1994), *cert.*

*denied*, —— U.S. ——, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995).

Not all workplace harassment affects a term, condition or privilege of employment within the meaning of Title VII. *Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). To establish that harassment affected a term or condition of employment, a plaintiff must prove that the harassment was so severe and pervasive that it altered the conditions of employment and constituted an abusive working environment. *Id.* at 67, 106 S.Ct. at 2405–06. That requires a plaintiff to "prove more than a few isolated incidents of racial enmity." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir.1987). Instead, "there must be a steady barrage of opprobrious racial comments." *Bolden*, 43 F.3d at 551. The mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not affect the conditions of employment to a sufficiently significant degree to violate Title VII. *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir.1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). Similarly, racial comments that are sporadic or part of casual conversation do not violate Title VII. *Hicks*, 833 F.2d at 1412; *see also Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981); *Hampton v. Conso Prods., Inc.*, 808 F.Supp. 1227, 1236 (D.S.C.1992); *Pierson v. Norcliff Thayer, Inc.*, 605 F.Supp. 273, 277 (E.D.Mo.1985).

The incidents on which McCray bases his claim do not constitute a hostile work environment as a matter of law. McCray claims that three to five times during the year he worked at DPC, Pierce called him "black yankee" and "son" and insulted three black political leaders. McCray also claims that Pierce and a DPC truck driver each told a racial joke, that another DPC truck driver called McCray a "nigger," and that Pierce and he had a physical altercation. These actions, while not commendable, are not so numerous and opprobrious as to constitute a hostile work environment. The racial jokes and comments were sporadic and merely part of casual conversation, and "[r]acial comments that are merely part of casual conversation, are accidental, or are sporadic do not trigger Title VII's sanctions." *Johnson*, 646 F.2d at 1257.

Moreover, the altercation between McCray and Pierce did not create a hostile work environment. There is no evidence that the fight was predicated on racial animus, as opposed to personal animosity between these two men. Thus, this incident does not establish McCray's claim of a racially hostile work environment. *See Brown v. Masonry Prods., Inc.*, 874 F.2d 1476, 1478 (11th Cir. 1989) ("A spontaneous brawl between men of different races does not alone bring the matter within the confines of the federal statutes alleged here."), *cert. denied*, 493 U.S. 1087, 110 S.Ct. 1153, 107 L.Ed.2d 1057 (1990); *see also Bolden*, 43 F.3d at 551 (harassment or abuse not based on race does not violate Title VII or § 1981); *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir.1994) ("[P]ersonality conflicts between employees are not the business of the federal courts.").

McCray, in response to the summary judgement motion, makes some general allegations about additional racial slurs and harassing behavior. However, despite the fact that McCray had ample time to prepare his response, he has not proffered any specific facts supported by admissible evidence to establish that he was subjected to severe and pervasive racial harassment. Conclusory allegations and inadmissible evidence cannot create a genuine issue of material fact to defeat summary judgment. *See Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 192 (5th Cir.1990); *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir.1986); *Bowser v. McDonald's Corp.*, 714 F.Supp. 839, 843 (S.D.Tex.1989). Accordingly, DPC and Pierce are entitled to summary judgment on McCray's Title VII and § 1981 hostile work environment claim.

3. *DPC took prompt remedial measures to address McCray's complaint.*

DPC is entitled to summary judgment on McCray's hostile work environment claim for additional reason: after McCray reported the racial jokes and slurs, DPC took prompt remedial action to eliminate the complained-of behavior.

When a company, once informed of allegations of racial harassment, takes reasonable remedial action to eliminate the complained-of behavior, the company cannot be held liable for a hostile work environment. *Cf. Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 402, 404 (5th Cir.1993); *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 793–94 (5th Cir.1994). McCray admits that when he complained to Harding about the truck drivers' racial joke and racial slur, Harding called a meeting of all the employees and instructed them that such conduct was prohibited. Harding also threatened any employee who engaged in such conduct with a three-day suspension without pay. McCray admits that he never reported another racial joke or slur to Harding after this meeting.

Moreover, the undisputed evidence shows that when McCray wrote to William Steil complaining of racial jokes and slurs, Steil interviewed Harding, Pierce and McCray extensively about the allegations. Steil also individually interviewed McCray's co-workers to determine whether any of them had made racial slurs or engaged in other inappropriate behavior. Although he uncovered no evidence of wrongdoing, Steil instructed all of the employees with whom he spoke that such behavior was prohibited. Finally, after McCray and Pierce fought, McCray was not the only participant disciplined. Steil reprimanded Pierce in writing, reduced his hours and, following an investigation into Pierce's conduct, DPC fired Pierce.

Although McCray generally alleges that DPC failed to adequately address his complaints, these allegations are neither specific nor supported by admissible evidence. Such conclusory allegations and inadmissible evidence cannot create a genuine issue of material fact to defeat summary judgment. *See Howell Hydrocarbons*, 897 F.2d at 192; *Slaughter*, 803 F.2d at 860; *Bowser*, 714 F.Supp. at 843.

## B. The Title VII Retaliation Claim

McCray asserts that after he wrote the letter to Steil opposing his alleged discriminatory treatment at DPC, DPC and Pierce retaliated against him in violation of Title VII. Specifically, McCray claims that after he wrote the letter, he was given harder work assignments and that he was criticized for trivial matters. Defendants are entitled to summary judgment on this claim.

### 1. *Pierce is not individually liable under Title VII.*

For the reasons discussed above, Pierce cannot be individually liable under Title VII and is therefore entitled to summary judgment on McCray's retaliation claim. Pierce is also entitled to summary judgment on the Title VII retaliation claim for the reasons set forth below.

### 2. *McCray failed to exhaust his administrative remedies.*

■ Filing an EEOC charge is a mandatory prerequisite of a Title VII lawsuit. *See* 42 U.S.C. § 2000e–5(F)(1); *Tolbert v. United States*, 916 F.2d 245, 247–48 (5th Cir.1990). Consequently, in a Title VII lawsuit the Fifth Circuit has limited the trial court's scope of inquiry to "those grounds of a Title VII complaint that were raised in the administrative process." *Anderson v. Lewis Rail Serv. Co.*, 868 F.2d 774, 775 (5th Cir.1989). Court action cannot encompass facts or issues that do not relate to the subject matter of the EEOC charge. *Id.*

■ McCray never raised his retaliation claim in his EEOC charge. McCray's EEOC charge alleges only race discrimination. McCray did not check the retaliation box on his EEOC charge, and the text of the charge does not refer to retaliation or contain any factual allegations to support a retaliation claim. This failure to exhaust administrative remedies bars McCray's retaliation claim in this lawsuit.

McCray argues that he was not required to exhaust administrative remedies on his retaliation claim, and he cites *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir.1981) to support that claim. McCray's reliance on *Gupta* is misplaced. In *Gupta*, the plaintiff filed an EEOC charge alleging national origin and religious discrimination. *Id.* at 413. He later sued for the alleged discrimination, and in that lawsuit he also claimed that after he filed the EEOC charge,

his employer retaliated against him. However, the plaintiff had not filed an additional EEOC charge alleging retaliation. *Id.* The Fifth Circuit held that it was not necessary to file a charge for a retaliation claim when that claim grows out of a previously filed EEOC charge. *Id.* at 414.

The situation in *Gupta* is distinguishable from this case because McCray's retaliation claim does not grow out of a previously filed EEOC charge. The alleged retaliation about which McCray complains occurred before McCray ever went to the EEOC. Thus, the *Gupta* rule does not apply. *See Ang v. Procter & Gamble Co.,* 932 F.2d 540, 547 (6th Cir.1991) (noting that "[r]etaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards"). Where the alleged retaliation occurs before the initial EEOC charge is filed, a plaintiff must exhaust his administrative remedies on that claim. *See, e.g., Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, n. 2 (7th Cir.1988), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989). To hold otherwise would effectively exempt all retaliation claims from Title VII's requirements regarding exhaustion of administrative remedies.

McCray next argues that he exhausted his administrative remedies because he attached to his intake questionnaire a letter that he wrote to Charlcye Sells, DPC's Administrative Manager, after his discharge. This letter, McCray asserts, mentions the alleged retaliation. McCray then argues that his intake questionnaire, with the attached letter, was "incorporated with" his EEOC charge, thus constituting references to retaliation in his charge. McCray is mistaken.

Intake questionnaires and EEOC discrimination charges are two separate things. *See Early v. Bankers Life and Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992) (explaining the difference between a questionnaire and a charge). Courts generally do not treat intake questionnaires as charges. For example, in *Park v. Howard University,* 71 F.3d 904 (D.C.Cir.1995), the court of appeals reversed and rendered a verdict for the plaintiff on a hostile environment claim because her EEOC charge did not refer to such a claim. *Id.* at 907, 909. Like McCray here, the *Park* plaintiff argued that the court should find that she exhausted her administrative remedies because her intake questionnaire, to which she had attached a letter detailing the alleged discrimination, contained some allegations of a hostile work environment. *Id.* at 908.

The court rejected her argument, determining that the "questionnaire is not the same as an EEOC charge." *Id.* There was no evidence the employer ever had access to the questionnaire, and thus the questionnaire could not have fulfilled the notification purpose of the EEOC. *Id.* at 909. The Court stated that "[t]o treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not the questionnaire." *Id.* (quoting *Early,* 959 F.2d at 80).

That is precisely the case here. Regardless of what McCray's intake questionnaire or its attachment says, McCray has provided no evidence that DPC ever had access to his questionnaire or otherwise received notice from the EEOC that he was asserting a claim for retaliation. Because McCray failed to exhaust his administrative remedies, DPC is entitled to summary judgment on his retaliation claim.

### 3. *McCray did not establish a prima facie case of retaliation.*

██ DPC is also entitled to summary judgment because McCray did not establish a *prima facie* case of retaliation. A *prima facie* case of retaliation exists if the plaintiff proves (1) that he engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there is a causal connection between the participation in the protected activity and the adverse employment decision. *See Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092 (5th Cir.1995). To establish this third element, McCray must show that but for the protected activity, the adverse action would not have occurred. *See id.* at 1092; *McDaniel v. Temple Indep. Sch. Dist.,* 770 F.2d 1340, 1346 (5th Cir.1985). "Whether or not

there were other reasons for the employer's action, the employee will prevail only by proving that 'but for' the protected activity [he] would not have been subjected to the action of which [he] claims." *Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir. 1984).

McCray failed to create a material fact issue on the existence of a causal connection between his alleged protected activity and the disciplinary action taken against him. DPC demonstrated that McCray's violation of safety and work rules, not his alleged protected activity, was the reason for his discipline and discharge. In response, McCray failed to produce admissible evidence sufficient to demonstrate that but for his alleged protected activity, he would not have been reprimanded or discharged. Accordingly, DPC is entitled to summary judgment.

### 4. *Plaintiff produced no evidence of pretext.*

■ Even assuming, *arguendo*, that McCray established a *prima facie* case of retaliation, his claim still fails because he did not produce any evidence sufficient to show that DPC's stated reasons for its employment actions were a pretext for retaliation. DPC presented a legitimate, non-discriminatory and non-retaliatory reason for its employment decisions regarding McCray: his violations of safety and work rules, which posed a threat to both him and his co-workers. Although McCray had ample time to prepare his response, he presented no admissible evidence sufficient to create a genuine issue of material fact that this reason was a pretext for retaliation. Thus, DPC is entitled to summary judgment.

### C. The Discriminatory Discharge Claim

In *McCray v. DPC Industries, Inc.*, 875 F.Supp. 384 (E.D.Tex.1995), summary judgment was granted in favor of Pierce on Plaintiff's Title VII claim for discriminatory discharge because Pierce cannot be individually liable under Title VII as a matter of law. *Id.* at 392. Pierce's Motion for Summary Judgment on Plaintiffs § 1981 claim for race dis-

crimination was denied because the sole basis for Pierce's motion was the after-acquired evidence doctrine, and shortly after Pierce filed his motion, the United States Supreme Court determined that after-acquired evidence is not necessarily a complete bar to liability. *See id.* Pierce has therefore moved for summary judgment on the § 1981 discriminatory discharge claim again, this time asserting several grounds for his motion. Pierce's motion is granted.

■ First, Pierce is entitled to summary judgment on McCray's § 1981 claim for discriminatory discharge because Pierce did not discharge McCray. All termination decisions were made at DPC's Houston headquarters, and Pierce had no authority to hire or fire employees. Under § 1981, Pierce can be held liable only for his own personal, intentional conduct. *See Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir.1991). Because Pierce did not make the termination decision, the claim for discriminatory discharge claim against him fails.

In addition, DPC, in its first motion for summary judgment, articulated a legitimate, non-discriminatory reason for McCray's discipline and discharge: his safety violations and other violations of DPC's Rules of Conduct. *McCray*, 875 F.Supp. at 389. In response, McCray failed to produce evidence sufficient to create a fact issues about whether DPC's proffered reasons were a pretext for race discrimination. Summary judgment was therefore granted for DPC on McCray's Title VII and § 1981 discriminatory discharge claims. *Id.* at 389–90. In his second motion for summary judgment, Pierce incorporated by reference DPC's evidence regarding the legitimate non-discriminatory reason for McCray's discharge, and again, McCray failed to produce any evidence sufficient to raise a fact issue about whether these reasons were a pretext for discrimination. Pierce is therefore entitled to summary judgment on McCray's § 1981 discriminatory discharge claim.

### IV. Conclusion

For the reasons stated above, the Court is of the opinion that DPC Industries, Inc.'s

Motion for Summary Judgment and Terry Lee Pierce's Motion for Summary Judgment should be GRANTED. This case is dismissed.

It is so ORDERED.